## UNITED STATES v. CATLIN et al.
### No. 10750.

United States Court of Appeals
Seventh Circuit.
April 17, 1953.

Rehearing Denied June 26, 1953.

R. H. McRoberts and Henry Davis, St. Louis, Mo., George D. Burroughs, Edwardsville, Ill., Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Burroughs, Simpson & Burroughs, Edwardsville, Ill., of counsel, for appellant.

James M. McInerney, Asst. Atty. Gen., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., Marks Alexander, U. S. Atty., Springfield, Ill., John F. Cotter, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This action was instituted by the United States of America on March 31, 1942, to condemn approximately 1,153 acres of land in Madison County, Illinois, adjacent to the Mississippi River. A Declaration of Taking was filed on November 12, 1942, vesting title in plaintiff. Settlements were made with all owners of the land condemned except the instant defendants who were and are trustees of a syndicate referred to as the "Cool Land Syndicate." Defendants filed their motion to vacate the order vesting title in the United States and to dismiss the proceeding. On November 17, 1943, plaintiff filed an amendment to its petition for condemnation, and defendants' motion to vacate the petition and taking was renewed. From a denial of this motion an appeal was taken to this court, which held that the order was not a final and appealable order and dismissed the appeal. United States v. Catlin, 7 Cir., 142 F.2d 781. The Supreme Court affirmed, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911.

Upon remand, the case was tried upon the issue of just compensation to be awarded the defendants for the land taken as well as for the determination of damages to defendants' land not taken. The jury by its verdict determined such compensation and damages. Judgment was entered in favor of the defendants in accordance with the verdict thus rendered. From this judgment defendants appeal to this court.

The grounds relied upon for reversal are (1) that the court erred in denying defendants' amended motion to vacate the taking and to dismiss the petition, (2) that improper instructions were given to the jury and (3) that improper evidence was introduced by the government. While nothing has previously been decided either by this or the Supreme Court other than that the former appeal was premature, the facts recited in those opinions are fairly complete and we think need not be repeated in detail.

The original petition alleged that the suit was instituted on behalf of the Attorney General of the United States, at the request of the Secretary of War, pursuant to the provisions contained in the Act of Congress approved August 18, 1890, as amended by the Acts of Congress approved July 2, 1917, 40 Stat. 241, and April 11, 1918, 40 Stat. 518, 50 U.S.C.A. § 171. The purposes for which condemnation is authorized by this section were set forth, and it was alleged that funds had been appropriated for the acquisition of lands needed

for the prosecution of military affairs in connection with the then existing emergency. Following this, the Declaration of Taking was filed, wherein it was alleged that the lands sought to be condemned were needed "for the construction of an engineering depot and for other military uses incident thereto." Defendants by their motion to vacate the taking and dismiss the proceedings relied upon a proviso in the section which the government designated as its authority for the condemnation, as follows: " * * * such proceedings to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted * *." Section 2, Chap. 47, Ill.Rev.Stat.1943, provides that condemnation proceedings shall be instituted by filing "a petition, setting forth, by reference, his or their authority in the premises, the purpose for which said property is sought to be taken or damaged * * *."

■ Defendants' contention from the beginning has been that the court never acquired jurisdiction for the reason that the petition failed to allege that the land was sought for a purpose enumerated in the statute designated by the plaintiff as its authority. This contention is predicated upon the Illinois statute which requires a statement of the purpose for which land is sought to be taken. Assuming that there was a failure to allege such purpose, we think it was a procedural defect only, and one that did not go to the jurisdiction of the court. In our judgment, the failure to expressly designate the purpose of the condemnation at most was only an impediment to the authority of the court to proceed; its jurisdiction was obtained otherwise.

We need not dwell further upon these proceedings in their early stage for the reason that the government amended its petition by adding a paragraph which alleged that the land had been taken for all the purposes authorized by 50 U.S.C.A. § 171, and by incorporating a letter dated March 26, 1942, from the Secretary of War, stating that the land was necessary for the establishment of a "supply depot and related military purposes." We think this statement of purpose cured any defect which may have existed in the original petition and that the condemnation was authorized by § 171. United States v. Black, 5 Cir., 167 F.2d 167, 169; Iriarte v. United States, 1 Cir., 157 F.2d 105, 107, 167 A.L.R. 494; City of Oakland v. United States, 9 Cir., 124 F.2d 959, 964.

■ In any event, there became effective March 27, 1942 (four days prior to the filing of the original petition) an Act which expressly authorized the Secretary of War and certain other government officials and agents to cause proceedings to be instituted, for the purpose of acquiring "by condemnation, any real property, * * * that shall be deemed necessary, for military, naval, or other war purposes * *." 50 U.S.C.A.Appendix, § 632. Defendants do not dispute that the land in controversy was acquired for the purpose stated in this 1942 Act and that the government's amended petition so disclosed. It is argued, however, that this statute cannot be relied upon because it was not designated either in the original petition, the amended petition, or the Declaration of Taking as authority for the government's action. Any merit in this contention appears to have been resolved against defendants' contention by the Supreme Court in United States v. Certain Parcels of Land in Fairfax County (Commonwealth of Virginia, and Belle Haven Realty Corp.) 73 S.Ct. 693. In that case, as here, the original condemnation proceeding was under attack because it was claimed there was no authority in the Act relied upon. The court, however, found authority in another Act [Act July 15, 1943, 42 U.S.C.A. § 1534 note] which it concluded was sufficient. With reference thereto, it stated, 73 S.Ct. at page 695: "The 1943 amendment was in effect when the present petition was filed and its applicability here is common ground among the parties. It explicitly authorized the condemnation of such property subject to the conditions stated."

■ Defendants argue that the court erred in permitting witnesses for the government to testify as to the cost of build-

ing a levee around the land taken. This argument has little if any merit on the record as presented. Defendants' witnesses, testifying as to the value of the land taken, stated in effect that before it could be used advantageously for industrial purposes it would be necessary to protect it by levees. In rebuttal, government witnesses were permitted to testify over objection as to the cost which such levees would entail. Under these circumstances, we think such testimony was properly admitted. Defendants rely upon Brown v. Illinois, Iowa & Minnesota Railway Co., 209 Ill. 402, 403, 70 N.E. 905, in support of their contention on this point. There, testimony was held incompetent as to the cost which would be necessary to place the land in condition so that it would be suitable for the purpose for which it was sought to be condemned. In contrast, in the instant case, the testimony was not only offered in rebuttal, but for the purpose of showing the cost of building a levee which would make it suitable not for the purpose for which it was being condemned but for the purpose which defendants asserted was its highest and best use, that is, for industrial purposes. Moreover, the court in the Brown case held that the incompetent evidence was not prejudicial and affirmed the judgment.

Lastly, we consider the contention, urgently pressed, that the trial court committed prejudicial error in charging the jury as follows: "The use that the Government has made of this property for the ordnance depot, is not to be considered for any purpose in determining the question of reasonable and just compensation. You should view this property as nearly as you are able as it existed March 31, 1942, ten years ago." An appropriate exception was taken, and in a colloquy with the court, counsel for the defendants stated, "They cannot take into consideration the improvements, but what the Government has done, they may. I am afraid you are telling them they should not take that into consideration." To this statement the court responded, "That is exactly what I have told them."

Defendants, in support of their contention that the jury was entitled to take into consideration the use which the government has made of the property taken and that the court erred in its instruction to the contrary, cite Mississippi & Rum River Boom Company v. Patterson, 98 U.S. 403, 408, 409, 25 L.Ed. 206; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063; Ford Hydro-Electric Co. v. Neely, 7 Cir., 13 F.2d 361, 362 (a decision of this court).

It is true, in the Boom case it was held that the adaptability of the lands for the purposes for which they were taken, that is, a boom, was a proper element for consideration in estimating the value of the land condemned but, as defendants point out in their brief, "The land in that case was practically worthless for any purpose except the single purpose for which it was taken and it had a high value for that purpose." And it might be added that the land had or might have had the same high value to those other than the condemner.

As we read the Chandler-Dunbar case, it not only affords no support to defendants' contention, but adequately distinguishes the Boom case. With reference to the latter case, the court stated, 229 U.S. at page 77, 33 S.Ct. at page 677:

"A boom company sought to condemn three small islands in the Mississippi river so situated with reference to each other and the river bank as to be peculiarly adapted to form a boom a mile in length. The question in the case was whether their adaptability for that purpose gave the property a special value which might be considered. This court held that the adaptability of the land for the purposes of a boom was an element which should be considered in estimating the value of the lands condemned."

Further, the court in the Chandler-Dunbar case stated, 229 U.S. at page 76, 33 S.Ct. at page 677:

"The value should be fixed as of the date of the proceedings and with

reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken and not as enhanced by the purpose for which it was taken."

And again, 229 U.S. at page 80, 33 S.Ct. at page 678:

"That the property may have to the public a greater value than its fair market value affords no just criterion for estimating what the owner should receive. It is not proper to attribute to it any part of the value which might result from a consideration of its value as a necessary part of a comprehensive system of river improvement which should include the river and the upland upon the shore adjacent."

In the Ford Hydro-Electric Company case, this court sustained the competency of evidence as to the value of land for the purpose for which it was taken, that is, for the development of water power. In doing so, the court stated, 13 F.2d at page 362:

"The evidence objected to threw light upon the availability of the land for water power purposes and the value of such element, as bearing upon what might be paid for it by one desiring to purchase it, and thus bore upon its market value."

As we understand these cases, they are authority for nothing more than that the land owner is entitled to prove the value of the land for the purpose for which it is taken, when and if the land could or might be utilized by others for the same purpose for which it is condemned. Where, as here, however, the land is condemned by the government for a military purpose, the reason for the rule does not exist. No person or agency other than the government could have occasion to condemn land for a military purpose. Conversely, a property owner could not sell land for a military purpose to any person or agency other than the government.

Moreover, defendants offered no proof as to the value of the land for the purpose for which it was taken by the government. The witnesses offered by the defendants on the issue of value predicated their opinions upon the use of the land for industrial purposes. True, it is suggested that the purpose for which it was taken by the government, and particularly the use to which it was put, that is, an ordnance depot, was in the same category as though it had been taken for industrial purposes, but there was no proof of such fact, if such it be.

Another case which militates against defendants' contention and which distinguishes the Boom case is that of Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236. There, the court in discussing the elements of just compensation, 292 U.S. at page 256, 54 S.Ct. at page 709, stated:

"And, to the extent that probable demand by prospective purchasers or condemnors affects market value, it is to be taken into account. [Mississippi & Rum River] Boom Co. v. Patterson, ubi supra. But the value to be ascertained does not include, and the owner is not entitled to compensation for any element resulting subsequently to or because of the taking."

An instruction in accordance with defendants' contention would have permitted the jury, without proof, to speculate upon the value of the use for which the government had taken the property, that is, for an ordnance depot—this in face of the fact that the land taken had no market value for such purpose—and its fair market value for agricultural, industrial or any other purpose was not enhanced in any manner by its taking by the government for a military purpose. We conclude there was no impropriety in the giving of the instruction under attack.

The judgment appealed from is
Affirmed.