**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis W. BRINKER and Julia T. Brinker, Defendants-Appellants,
Carlos F. Bingesser and Marjorie L. Bingesser, Defendants-Appellees.**

**No. 10199.**

United States Court of Appeals
Tenth Circuit.

June 25, 1969.

Rehearing Denied Aug. 4, 1969.

734

Paul L. Aylward, of Miner & Aylward, Ellsworth, Kan., for appellants.

William M. Cohen, Attorney, Department of Justice, Washington, D. C. (Clyde O. Martz, Asst. Atty. Gen., S. Billingsley Hill, Attorney, Department of Justice, Washington, D. C., Benjamin E. Franklin, U. S. Atty., and Clarence J. Malone, Asst. U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

The United States filed a declaration of taking on June 24, 1964, to condemn a 347-acre farm in Mitchell County, Kansas. Fee title in the land was held by Carlos and Marjorie Bingesser who had granted a fifteen year lease to the appellants Francis and Julia Brinker, husband and wife. Although the lessors

and the Government requested a jury trial on the issue of just compensation, the district court convened a commission pursuant to Rule 71A(h), F.R.Civ.P. Over objection, the court approved the report of the commission and awarded $203,183 to the lessors and $5,526 to the lessees. The lessees consider the award to be inadequate and prosecute this appeal.

■ At the outset we are confronted with the Government's contention that this court is without jurisdiction because the lessors did not appeal. This assertion is apparently predicated upon the established rule that the United States has no interest in the division of a condemnation award between the respective estates.[1] We have no quarrel with the Government's premise, but that proposition is hardly authority, and no other has been cited, for precluding the lessee from questioning the propriety of the total award. It would be absurd to condition the lessee's right to appeal upon his success in persuading the lessor to join him. The parties have independent interests which each is entitled to assert in his own right.

Another preliminary issue concerns the appellants' objection to the use of a commission rather than a jury in assessing just compensation. Suffice it to say that appellants did not seek a jury trial in the district court and will not be heard to request a jury trial for the first time on appeal. United States v. Waymire, 202 F.2d 550 (10th Cir. 1953).[2]

The lessees' primary contention is that the commission erred in rejecting the income capitalization approach in determining fair market value. The record reflects that the lease, which was to expire January 1, 1973, provided for the production of grass seed and granted the lessors a one-third interest in the crops. Accordingly, the lessees had

1. See Scully v. United States, 409 F.2d 1061, 1063, n. 1 (10th Cir. 1969).

2. The lessors and lessees were represented by the same counsel. He did request a jury trial on behalf of the lessors but the record indicates that he failed to do so on behalf of the lessees.

planted grass seed and attempted to establish the past and future profits from the sale of the seed as the best indication of market value. The Government's experts testified that the market for grass seed was too speculative, that grass was not the highest and best use of the property, and that market value was best exemplified by sales of comparable land for general farming purposes. The commission chose to place a greater weight on the testimony of Government experts and concluded that anticipated profits from the production of grass seed were too speculative to be determinative. Appellants thus assert that the commission's reliance was misplaced.

■■ The findings of a commission will be accepted unless clearly erroneous for this court will not retry the facts, which when based on sharply conflicting evidence are conclusively binding here. Thetford v. United States, 404 F.2d 301, 303 (10th Cir. 1968). Inasmuch as the lessees' objection to the commission's valuation is merely an attempt to induce this court to reweigh the evidence, we are not persuaded to invalidate the award.

The Government experts based their valuation testimony upon three sales of comparable farm properties in the area. As this court has indicated, "it is generally recognized that the best evidence of market value is found in sales of comparable property * * *." United States v. Sowards, 370 F.2d 87, 89 (10th Cir. 1966). Moreover, the income capitalization figures adopted by the lessees' experts were rejected because the highly volatile character of the grass seed market and the unspectacular past profits from this particular farm, operated to render the grass seed business less than the highest and best use of the land. We cannot say that the grass seed market was not speculative or that general farming was not the more profitable use of the land. These matters are factual determinations resting within the specific province of the trier of fact. Also, it is a general rule that past and future profits from any business, especially farming, are too uncertain and speculative to be of much weight in ascertaining the market value of condemned property.[3] "The constitutional requirement [of just compensation] extends only to the property taken, and not to the opportunities which the owner may lose." 370 F.2d at 89.

The lessees assert that $20 per acre is an inordinately low estimation of the enhancement in value arising from the existence of a maturing grass crop on the appropriated acreage. The commission found that the grass crop increased the value of the land only to the extent of the actual cost of planting it. As indicated above, the lessees' enhancement evidence was mere speculation. The commission was clearly justified in disregarding it and adopting a figure based on the cost of the crop.

■ The final contention raised by appellants is that the growing crop was damaged by the Government. This claim arises from the fact that the declaration of taking included a statement that the crop should be harvested by August 31, 1964. Because the grass seed would not mature until later in the season, the lessees concluded that it would be useless to irrigate a crop that they would not be allowed to harvest. Actually, as provided in the order of possession filed July 29, the lessees were given until December 31 to produce the crop and they did accomplish the harvest. If the production was decreased because of the failure to irrigate, the fault lies not with the Government. The statement in the declaration of taking was not binding on the lessees until ap-

---

3. Welch v. Tennessee Valley Authority, 108 F.2d 95 (6th Cir. 1939) cert. den. 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030; United States v. Meyer, 113 F.2d 387 (7th Cir. 1940) cert. den. 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; United States v. Ham, 187 F.2d 265 (8th Cir. 1951). See generally, 5 Nichols, The Law of Eminent Domain § 19.3 [6] (3d ed. 1962) and Annot., 16 A.L.R.2d 1113 (1951).

proved by the court and an order of possession entered.[4] Consequently, it was not the condemnation, but the ill advised action of the lessees that was responsible for any damage that may have resulted. We must agree with the commission that the lessees "were permitted to farm and harvest growing crops on said premises until December 31, 1964, and did in fact tend and harvest said growing crops, and there was no evidence of any act by the Government * * * which contributed to any loss of crops. * * *" Clearly then, the lessees did not sustain the burden of proving damages.

Affirmed.

---

4. See 6 Nichols, The Law of Eminent Domain § 27.25[1] (3d ed. 1965).