**UNITED STATES of America,
Appellee,**

v.

**Helen Louise CORBIN, Virginia May
Wyllie, et al., Appellants-
Landowners.**

**No. 28–69.**

United States Court of Appeals,
Tenth Circuit.

March 23, 1970.

John R. Hamilton, Topeka, Kan. (Ward D. Martin, Arthur L. Claussen, and Donald D. Barry, Topeka, Kan., on the brief), for appellants.

William M. Cohen, Dept. of Justice, Washington, D. C. (Glen E. Taylor, Acting Asst. Atty. Gen., S. Billingsley Hill and Max Findley, Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HICKEY and HOLLOWAY, Circuit Judges, and EUBANKS, District Judge.*

HICKEY, Circuit Judge.

This appeal of an award made for land condemned pursuant to Fed.R.Civ. P. 71A challenges the trial court's order approving a report of a commission appointed for the purpose of determining the land's fair market value. The land in question was used as a fish farm and contained several fish rearing ponds. The appellants herein were the owners of this property.

The matter comes to us basically upon the adequacy of the award. It is contended the award was prejudiced by the following alleged errors which occurred during the commission hearing:

1. Restricting cross-examination of government witnesses.
2. Admitting testimony relating to rental of fish ponds not comparable to the subject property.
3. Admitting testimony relating to sales not comparable, contra to a stipulation and including a family settlement agreement.
4. Admitting pictures of the subject property not representative of the subject property on the date of taking and of other forms.
5. Admitting the assessed valuation of the subject tract.
6. Considering the testimony of government experts.
7. Using the summation approach to determine the total award.
8. Accepting the government's figures establishing the number, size and species of fish in the ponds at the time the government took possession of the fish.
9. The just compensation award of $78,000 is not supported by substantial admissible evidence.

■ The scope of review a federal Court of Appeals exercises over the determination of a district court concerns a determination of whether proper legal standards were applied in resolving the issue of just compensation and whether any supplemental findings of the district court were clearly erroneous. A commission's findings are considered only to see whether the district court properly accepted and approved them as not being clearly erroneous. United States v. Brinker, 413 F.2d 733 (10th Cir. 1969).

In this case the question presented to the commission related to how much the contributing value the fish farm operation including the fish in the ponds enhanced the stipulated value of the lands themselves.

■ It is stipulated that there are no comparable sales available. Therefore the standards available to determine fair market value of the fish farm element were restricted to two approaches: (1) The reproduction cost minus depreciation, and (2) The capitalization of net income approach.

Evidence was adduced relating to each approach, however, the commission selected the capitalization of income approach as the most satisfactory means of establishing fair value. The commission reached this conclusion because the cost reproduction approach did not provide for the element of uniqueness in the topography where no comparable fish farm sales were available.

■ The direct capitalization of net income approach could not be applied to actual income because the landowner did not have available adequate books and records to establish income. The commission proceeded to consider a rental income approach which had as an arbitrary element constructed rental income. This approach was used by both parties and therefore, on the record, we cannot conclude this was an improper standard.

Three major factual elements separate the condemnees' and condemnor's ideas of a dollar value representing the fair value. They are: (1) The arbitrary

* Sitting by designation.

rental income figure adopted by the commission, (2) the number of acres to be considered as productive acres for rental, and (3) the capitalization rate used.

In accord with United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) and United States v. Evans, 380 F.2d 761 (10th Cir. 1967), the commission filed a detailed report which shows the path the commission took through the maze of conflicting evidence required to establish the arbitrary elements needed in the rental income approach.

We first analyze this report of the commissioners to determine whether proper legal standards were applied to reach the conclusions upon which the awards were based.

This is the procedure the trial court followed in finding against the landowners. We, however, must make the same examination under the appellate rule set out above in order to consider the clearly erroneous requirement.

■ The evidence establishing the arbitrary rental value ranged from $50.00 to $190.00 per productive acre. The commission found $100.00 per acre to be a fair value stating that an expert witness on each side had given that figure in his testimony. Landowners point out that their expert used the $100 figure as a qualified figure if 40 acres were used as the productive area and $120 per acre if 32 acres were used as a productive area. The basis for increasing the rental value if the productive area was diminished was not accepted by the commission. This matter was a factual determination resting within the specific province of the trier of facts. *Brinker, supra* at 735.

■ The evidence establishing the number of productive acres ranged from 49 acres to 22.5 acres of productive pond area. The commission found 32 pond acres capable of producing fish for commercial purposes. It stated this was the landowners' figure rather than the government's figure. The record indicates it was the figure given by a landowner

appraiser who used the figure of $190.00 per acre rental value. The range of conflicting testimony provided a subject for factual determination. *Brinker, supra.*

The principal approach to value in this case was by capitalization of rent. It was used by a majority of the expert witnesses, by the commissioners and by the district court.

"There is no fixed rule as to the rate of capitalization, although it has been held that the basis for the rate used in a specific case must be established by factual data supporting such rate." 5 Nichols on Eminent Domain, § 19.23, pp. 19–40 (3rd ed. 1969).

The evidence indicates a range of from 5% to 10% as the rate of capital gain used by the experts. There is evidence showing the high risk factors in operating a fish farm. There is evidence that the rate of 8% is predominant in Arkansas as a capitalization rate for rental of fish farm property. Upon this evidence the commission used the 8% figure which allowed a greater award than a 10% figure and less than a 5% figure.

In accepting the evidence of an expert this court said, "Condemnation at best is an unhappy event aggravated by the inexactitude of expert opinion evidence forced into the subjective (and often unrealistic) beliefs of the parties as to value and damage. Expert opinion often varies greatly and subjective opinion nearly always." Phelps Dodge Corp. v. Atchison, T. S. F. Ry. Co., 400 F.2d 20, 24 (10th Cir. 1968).

The modern trend related in Rule 7–03, Preliminary Draft of Proposed Rules of Evidence, p. 143 (March 1969) "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

■ Although the 8% figure relied upon in Arkansas might not be admis-

sible in evidence directly as such, it came in as data relied upon by an expert who set 10% as a proper rate in his opinion which would have diminished the value of the property to less than the value derived from the 8% rate. The determination of the 8% capitalization rate used by the commission is not clearly erroneous.

From the foregoing evidence the commission determined the ponds and other improvements used to operate a fish farm enhanced the value $31,500. The values received in evidence ranged from $16,350 to $73,720. Thus, the commission's determination was within the range.

The record reflects supplemental Instruction J. "You are instructed that, by stipulation of the parties, the size, weight and species of fish in the ponds on Trust (sic) No. 231, as they existed on November 4, 1965, the date the Government took possession of the fish, shall be used in determining the contributory value of those fish to Tract No. 231 on March 19, 1965, the date title to said tract vested in the Government." The fish were not physically counted, weighed nor identified on November 4, 1965.

The evidence offered by the landowner is based upon the number of fish put in the ponds at a date sometime prior to the government's possession. The government's evidence is an estimate based upon some counting and weighing sometime after the date it took possession. Both procedures are speculative regarding the amount of fish in the ponds on November 4, 1965. Thus, both parties to the controversy submitted all the facts deemed by either to be pertinent to the issue. Evidence of diminution in numbers and weight was received which identified speculative loss by winter kill, predators, poachers and other forces which affect the number and weight. This evidence cuts both ways—favoring landowners and favoring government's estimates. The value placed upon the fish ranged from $3,500 to $13,000. The commission determined the value to be

$6,500 which is within the range of testimony admitted.

■ The conclusion reached by the commission is based upon sharply conflicting estimates each based upon inconclusive facts. The findings of a commission will be accepted unless clearly erroneous for "this court will not retry the facts and a finding based on sharply conflicting evidence is conclusively binding here." Thetford v. United States, 404 F.2d 301, 303 (10th Cir. 1968). We do not find clear error.

Having related the evidence and sustained the procedure which shows, "what path the commissioners took" *Merz, supra,* 376 U.S. at 198, 84 S.Ct. 639, we proceed to examine the possibility of prejudice which the errors complained of might have affected thereby establishing clearly erroneous conclusions.

■ The record reveals that considerable testimony was adduced from counsel on each side in their questions to the witnesses. The scope and extent of cross-examination is ordinarily within the discretion of the trier of the fact so as to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from undue harrassment or embarrassment." Rule 6–11, Preliminary Draft of Proposed Rules of Evidence, p. 130 (March 1969). The record reflects that the commission recognized the criteria for control and exercised it. We cannot find prejudice affecting any one of the elements heretofore discussed by the control exercised over the cross-examination.

■ The testimony relative to the rental value of fish ponds was given by expert witnesses and in line with the modern trend set out under Rule 7–03, Preliminary Draft of Proposed Rules of Evidence, *supra.* We conclude the evidence complained of was a type reasonably relied upon by experts and data upon which they based their opinion.

The record discloses that the crucial determinations were made on the capi-

talization of income approach. Therefore any evidence of comparable sales was nothing more than data upon which inferences were based as a part of the total considerations given to establish a capitalization of income approach. It is also evident from the commission's report that it did not rely upon comparable sales. Therefore we must accept its exclusionary statement and in so doing we do not find clear error.

The pictures of other fish farms admitted appear to be clearly irrelevant to the path followed by the commission and therefore, having been disregarded by the commission as comparable evidence, could not be clearly erroneous. As to the pictures of the subject property whose admission is complained of, we agree with the trial court that their deficiencies were developed, and that the report shows no reliance on the exhibits which should have been excluded as not representative of the condition of the fish farm. Moreover, the commission viewed the property. We cannot say that any reversible error is shown in connection with the photographs.

The assessed valuation cannot be related to the elements considered by the commission in arriving at its award. We can find no indication in the report that it was considered as an element upon which the award was based.

The testimony of the government witnesses was offered as expert testimony, opportunity to cross-examine was afforded, and the trier of the facts determined the evidence would be received. *Phelps Dodge Corp., supra.* Thus, it was not clearly erroneous to receive the testimony complained of.

The parties stipulated the contributory value of the land was $40,000. The contributory value of the ponds and the fish was to be left for determination with special instructions on the value of the fish. Counsel for the landowners present an argument under what they have designated as the "summation" approach. The argument and cases cited identify what is called the "unit rule"

in condemnation cases by the texts and the courts.

The text cited in the briefs of landowners says, "Hence, the universality of its application has been expressly doubted." 4 Nichols on Eminent Domain, § 13.12 (1), p. 367 (3rd ed. 1969). The authority cited is United States v. City of New York, 165 F.2d 526 (2d Cir. 1948) and is the case used to predicate an annotation in 1 A.L.R.2d 870. "The discussion is directed to the propriety of a separate valuation of land and improvements in the minds or computations of the officer or officials charged with the process of evaluation. * * *" 1 A.L.R.2d at 879.

In pointing out the split of authority existing in awards or reports of commissions, the reasoning of a Pennsylvania court is cited, "That they itemized what constituted the aggregate of their finding is a bad reason for holding that their finding is not according to law." 1 A.L.R.2d, at 901. We are inclined to agree with the foregoing statement of the law in this case because the value of raw land was stipulated and the commission directed to determine the contributing value of the ponds and improvements as a fish farm together with the value of the fish in the ponds to be arrived at in a stipulated manner.

It would appear that comparable sales established the land values to the extent that parties could agree and stipulate as to that value.

It was agreed and stipulated there were no comparables for the fish farm operation, therefore the alternatives of cost reproduction or capitalization of income were available to the commission. The cost reproduction approach used by the landowners' one witness was rejected and the capitalization of income approach used by one landowner witness and the government witnesses accepted. We cannot say this determination was clearly erroneous.

The capitalization approach was further refined to a capitalization of rent approach because the landowners had no

evidence available that the property had in fact been income producing. Therefore an arbitrary rent income had to be constructed. Both parties enthusiastically proceeded and argued the position of their respective witnesses who constructed the arbitrary figure. In addition to the arbitrary rent construction, it was necessary to arrive at an arbitrary capitalization rate which the commission determined within the range of percentage offered. Therefore a separate approach from the raw land determination was required and obviously a separate approach on valuing the fish in place.

The stipulation above set out governed the approach to be used in determining the value of the fish enhancement. The stipulation foreordained a procedure which was an estimate of the number and weight of the fish multiplied by the established sale price per pound of fish. Landowners sought to establish the arbitrary number by introducing the amount of fish planted on the farm at a time prior to the transfer of possession and assuming that all fish planted would mature and grow to an arbitrary size. On the other hand, the government counted and weighed the fish in one pond some six months after the taking and took sample catches from the other ponds to relate numbers, size and predators to productive water acreage and thereby create a formula for arriving at the arbitrary figure of the number present on November 4, 1965.

■ Upon the facts the commission accepted the government's approach regarding numbers and weight and landowners' figure as to going price per pound. In the light of the stipulation we cannot say from the record the commission's factual determination was clearly erroneous.

The only component remaining for value determination was the fish farm operation relying upon the ponds and improvements. A stipulated approach in determining this value was not agreed upon. However, it was agreed there were no comparables available for considera-

tion, therefore, the alternatives of cost reproduction and capitalization of income refined to capitalization of fair rental income was available. The commission selected the latter approach as most reasonable and neither party objected to the approach. In order to comply with *Merz, supra,* the value arrived at for this component had to be disclosed. Each component was arrived at by a different approach. Therefore the aggregation of the values of the separate components seems to be the most logical manner of stating the ultimate award.

Supplemental Instruction B suggests this: "The measure of compensation in this case is the market value of the land condemned, taken as a whole and with due consideration given to all the components that tend to make its market value."

The basic objection seems to be to the manner in which the evidence established the component of the enhancement of value by the ponds and fish farm potential. Supplemental Instruction H advises the commission this can be done by expert opinion. The record reflects the expert's opinion was based upon the facts and data permitted pursuant to Rule 7–03, *supra.*

■ We adhere to the unit rule relied upon by the landowners citing United States v. Jaramillo, 190 F.2d 300 (10th Cir. 1951). However, we recognize that departure from the unit rule is permissible in unique situations. *See* City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942, 944–945 (1932); *See also* United States v. City of New York, 165 F.2d 526, 528–529 (2d Cir. 1948).

■ The situation evidenced by the foregoing treatment of the value determination based upon a basic stipulation of land value together with the stipulation of how to arrive at the value of the fish invites the aggregation of values to which objection is made. This, coupled with the evidence of topography uniqueness that contributed to the fish farm's enhancement of the value of the land which was stipulated, convinces us

there was no other procedure the commission could follow. Thus, the exception is justified.

Considering the distinct and separate approaches required to ascertain the values which contributed to the overall value of the property taken, we cannot say the separate report of each value and ultimate aggregation thereof with the stipulated value was error.

The final question whether the award of $78,000 is supported by substantial evidence has been answered by the foregoing discussion sustaining the evidence relied upon which ranged in amount from $60,000 to $153,000. The award was made on sharply conflicting evidence which we conclude was admissible. Therefore, we will not disturb it. *Brinker, supra.*

Affirmed.