**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**20.53 ACRES OF LAND, MORE OR LESS, IN OSBORNE COUNTY, KANSAS, and City of Downs, State of Kansas, a municipal corporation, et al., Defendants-Appellees.**

**No. 72-1571.**

United States Court of Appeals, Tenth Circuit.

May 15, 1973.

Dirk D. Snel, Atty., Dept of Justice (Walter Kiechel, Jr., Deputy Asst. Atty. Gen., Robert J. Roth, U. S. Atty., Roger K. Weatherby, Asst. U. S. Atty., and Jacques B. Gelin, Atty., Dept. of Justice, on the brief), for plaintiff-appellant.

Jerry W. Hannah, Topeka, Kan. (Lloyd Bloomer, Osborne, Kan., and George B. Collins, Wichita, Kan., on the brief), for defendants-appellees.

Before SETH, Circuit Judge, DURFEE,* Senior Judge, United States Court of Claims, and McWILLIAMS, Circuit Judge.

DURFEE, Senior Judge.

In this eminent domain proceeding the United States filed a declaration of taking and complaint on March 3, 1966, to acquire fee simple title, perpetual flowage easements, and lesser interests in property and municipal facilities belonging to the City of Downs, Kansas. These interests were being acquired for purposes of developing the Glen Elder Dam and Reservoir in north central Kansas. A Commission was appointed pursuant to Rule 71A(h), Fed.R. of Civ. P., to determine just compensation.

The declaration of taking specified upwards of thirty scattered property acquisitions, a number of which are clustered around the sewage treatment plant owned by Downs. This appeal by the United States is limited to that part of the judgment of the district court confirming the Commission's award of $220,000.00 as compensation for the acquisition of interests in four parcels around the City's sewage treatment plant. We reverse and remand.

The Government took fee simple title to the existing and only access road (Parcel F) to the sewage plant. The United States planned to build a substitute access road to run westward from the treatment plant and intersect with another road, also to be built and owned by the United States, which would run north to a public highway. The declaration of taking stated that the City "shall have the right to use" the north-south road from the public highway "as a means of access to" the substitute road running westward from the treatment plant, and that the latter road "shall be conveyed to the City * * * upon its request."[1]

---

* DURFEE, Senior Judge of the United States Court of Claims, sitting by designation.

1. At the time of trial in November 1970, both the substitute access road from the treatment plant to the north-south intersecting road and the north-south road to the public highway had been built and were in use.

The existing effluent or outfall line from the treatment plant was also acquired by the Government by means of obtaining interests in the parcels which the line traversed (Parcels G, H) and by obtaining all right, title, and interest of Downs in portions of the effluent line. Pertinent here is also a small acquired tract (Parcel C') to the southeast of the treatment plant.

The existing effluent line received treated sewage from the plant and conducted it by gravity to a discharge point along the north fork of the Solomon River. The Government planned to construct a protective dike along the river and an outlet works along the dike equipped to collect treated sewage and discharge it into the river. The declaration of taking provided that the United States "will construct, operate and maintain" a substitute effluent line running "to the outlet works to be constructed by the United States * * *", such operation and maintenance by the United States to continue "so long as the City * * * may require such in its disposal of sewage effluent." [2]

The district court adopted all of the findings and conclusions of the Commission without change or addition. Insofar as this appeal is concerned, the Commission found and concluded:

### TRACTS F, G, H and C.[3]

The Commission finds from the evidence that tracts F, G, H and C (sic) are so inter-related that they should be considered together. The Commission further finds from the undisputed evidence that prior to the taking, the City of Downs, Kansas was operating a primary and secondary sewage treatment plant in accordance with the rules and regulations of the Department of Health of the State of Kansas, and in all respects, in conformity with all statute laws of the state of Kansas governing the operation of sewage treatment plants. The Commission further finds that after the taking, the existing sewage plant was in effect destroyed and the rule of substitute facility, as instructed by the Court, should apply for the reason that there is no market data available for sewage treatment plants. The Commission further finds that the damages suffered by the city of Downs, Kansas, was the sum of $220,000.00.[4]

Appellant, the United States, argues (a) that the Commission apparently awarded compensation for the taking of the entire sewage treatment plant, valuing the plant by means of the replacement cost all facilities including the value of a chlorination facility which never existed as a part of the original plant; (b) that in awarding compensation the Commission impermissibly went beyond the scope of the declaration of taking since only the treatment plant's access road and effluent line were taken; (c) that the Commission was led astray by the district court, and the court overstepped its own jurisdiction, in instructing the Commission to consider whether or not the "city sewage system" had been "destroyed" by the takings; and (d) "the measurement of compensation for the Government's relocation of a sewer line and access road was clearly erroneous" since all adequate substitutes had been provided.

■ The foremost error infecting these proceedings is that the Commission failed to comply with the reporting standards set forth in United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L. Ed.2d 629 (1964). We cannot intelli-

---

2. As of the time of trial the effluent line had been rerouted and in use.

3. Both parties have indicated in their briefs that the tract involved is "C'", not "C".

4. Apparently the Commission concluded, and the court agreed, that the Government's promise to provide substitute facilities should be given no weight in determining just compensation; or, that since the Government merely promised permissive use of the Federally owned and controlled substitutes, the substitutes were valueless. We do not actually know the reasoning of the Commission.

gently review the alleged errors because we do not know how the Commission (and court) arrived at the award of $220,000.00.

■ The Commission's findings are to be accepted by the district court "unless clearly erroneous."[5] We in turn also accept the findings unless clearly erroneous. United States v. Brinker, 413 F.2d 733 (10th Cir. 1969). However, conclusory findings are alone not sufficient. Such findings are not reviewable by the "clearly erroneous" standard. *Merz*, supra, at 198, 84 S.Ct. 639. The Commissioners must show the pathway they took through the maze of conflicting evidence which *at the very least* consists of demonstrating the reasoning they used in deciding on the award, the standard of valuation they tried to follow, the line of testimony they adopted, and the measure of severance damages (if any) they used. *Merz, supra,* at 198, 84 S.Ct. 639. See generally, United States v. Corbin, 423 F.2d 821 (10th Cir. 1970); United States v. Evans, 380 F.2d 761 (10th Cir. 1967); Chandler v. United States, 372 F.2d 276 (10th Cir. 1967). Other than state generally that it was using the "substitute facility" rule, the Commission utterly failed to cast light on its pathway to this award.

The parties in this proceeding have given us record references to testimony whereby we might fabricate a bridge to the conclusions of the district court and the Commission. That is not our job.

■ Since this condemnation proceeding has involved a difficult and unusual configuration of facts and issues and it appears that the controversy has generated much heat, it may be helpful to the court and Commission to review here a few basic principles.

I. It is elementary that how much or how little property the United States elects to take by condemnation is a legislative, not a judicial, question. Berman v. Parker, 348 U.S. 26, 35–36, 75 S.Ct. 98, 99 L.Ed. 27 (1954). The nature or extent of the interest to be acquired is not to be expanded by judicial fiat. Wilson v. United States, 350 F.2d 901, 906 (10th Cir. 1965). On the other hand, it is equally clear and elementary that where part of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. United States v. Miller, 317 U.S. 369, 376, 63 S.Ct. 276, 87 L.Ed. 336 (1943), and cases therein cited. This is severance damage.[6]

■ II. The Supreme Court has long recognized the general rule that indemnity to the owner of condemned property is to be measured by the market value of the property.[7] But the Court has also recognized that market value "may not be the best measure of value in some cases." United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 1090, 93 L.Ed. 1392 (1949). More specifically, in Brown v. United States, 263 U.S. 78, 83, 44 S.Ct. 92, 94, 68 L.Ed. 171 (1923), where the Federal Government had condemned municipal facilities, Chief Justice Taft concluded that "(a) method of compensation by substitution

---

5. Fed.R.Civ.P. 71A(h) and 53(e)(2).

6. An argument of the Government upon this appeal is that the district court by instruction and orders repeatedly wrongly told the Commissioners that whether the "city sewage system" had or had not been "taken" was a factual question to be resolved by them. Although the district court's instructions and orders could have been more clearly drawn to avoid any remote inference that the Commission was free to consider whether or not the entire sewage plant was taken, we think that the court was, perhaps inartfully and confusedly, doing no more than explaining to the Commission that it could consider severance damages. The court negated the aforementioned inference in its April 10, 1968 Ruling on Objections to Supplemental Instructions, which the court directed the Commission to consider when interpreting instructions. In that Ruling the court said: "[C]ertainly no award may be made for property not taken."

7. See Annotation, 19 L.Ed.2d 1361, 1367–1369.

would seem to be the best means of making the parties whole." *See also* Annotation 40 A.L.R.3d 143 et seq.

■ In the case at hand the district court instructed the Commission:

> [T]he general principles applicable to an eminent domain taking of municipal facilities are well established. The taking may be justly compensated by payment of the costs of a substitute, so long as a full equivalent is afforded for the property taken. * * * A sewage disposal plant and sewage system of a city is a facility having no market value. * * *

A source of difficulty in this case has been created by the illusory intersection of the substitute facility rule and the severance damage rule. We believe the case of United States v. Board of Education of Mineral County, 253 F.2d 760 (4th Cir. 1958), offers some guidance. In that case the Federal Government took approximately three of the eight acres of the Ridgely, West Virginia, High School. The highest and best use of the eight acres was for school purposes; for these purposes the eight acres had no market value. The evidence was that the High School could not be properly operated with less than eight acres. Hence, the value of the entire eight acres "would be largely destroyed," according to the evidence, if land were not acquired in substitution for the land taken by the Government. The court concluded: "Any reasonable man would say that where the government takes a part of the property necessary to the proper operation of a school, the government should make it possible for the school to acquire other property to use in substitution for the property taken." 253 F.2d at 763. Similarly, where the Government takes a part of the property necessary to the operation of a sewage plant, the Government should make it possible for the sewage plant's owner to acquire other property to use in substitution for the property taken.

■ III. In eminent domain proceedings, it is axiomatic that "a full and just equivalent shall be returned" to the condemnee. Monongahela Navigation Co. v. United States, 148 U.S. 312, 325, 13 S.Ct. 622, 37 L.Ed. 463 (1893). The owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more." Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). An issue in this case is whether or not the Government is obligated to compensate Downs for the value of a new chlorination plant. The plant is necessary in order to treat sewage discharged into recreational waters in compliance with enhanced water quality standards. We believe the cases, City of Eufaula v. United States, 313 F.2d 745 (5th Cir. 1963), and United States v. 531.13 Acres in Oconee County, 366 F.2d 915 (4th Cir. 1966), will provide some guidance to the district court on remand. We do not mean to intimate that the result in these cases must also obtain here.

We decline otherwise to pass upon the alleged errors raised by appellant until we have a full and proper report of the Commission before us.

In remanding, we think in this case it is appropriate to follow the procedure outlined in *Merz, supra,* at 200, 84 S. Ct. 639. We think the district court should have the opportunity under Rule 53(e)(2) to make its decision afresh, in light of this opinion. On remand, the district court's informed discretion will be used to determine whether the matters should be resubmitted in whole or in part to the Commission, or whether the court itself should resolve the disputes on the existing records, or on those records as supplemented by further evidence.

Reversed and remanded.