UNITED STATES of America,
Appellant,

v.

46,672.96 ACRES OF LAND, MORE OR LESS, situate IN DONA ANA, ET AL., COUNTIES, STATE OF NEW MEXICO, and Andy Henderson, et al., Appellees.

UNITED STATES of America,
Appellant,

v.

9,101.24 ACRES OF LAND, MORE OR LESS, situate IN SIERRA AND OTE-RO COUNTIES, STATE OF NEW MEXICO, and Loyd Crockett, et al., Appellees.

UNITED STATES of America,
Appellant,

v.

40,021.64 ACRES OF LAND, MORE OR LESS, situate IN DONA ANA, ET AL., COUNTIES, STATE OF NEW MEXICO, and Genevieve Sanders, et al., Appellees.

Nos. 74–1602, 74–1603, 74–1604 and 74–1605.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 1, 1975.

Aug. 6, 1975.

See also D.C., 387 F.Supp. 839.

John J. Zimmerman, Atty., Dept. of Justice (Wallace H. Johnson, Asst. Atty. Gen., Victor R. Ortega, U. S. Atty., and George R. Hyde, Max Findley and Don Strouse, Attys., Dept. of Justice, on the brief), for appellant.

Harold L. Hensley, Jr. of Hinkle, Bondurant, Cox & Eaton, Roswell, N. M., for appellees.

Before LEWIS, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

DOYLE, Circuit Judge.

It is apparent from the caption that this is a condemnation case. The government challenges the amounts of the awards given first by a Commission and second adopted by the court in three condemnation cases (filed in June 1970). The government's purpose was to obtain the land for use in connection with the White Sands Missile Range which was operated by the Department of Defense. The total acreage involved was 180,000, but the cases before the court are concerned with 20,000 acres.[1] The interest taken is an annual leasehold starting July 1, 1970, and continued from year to year until June 30, 1980. Much of the land involved is leased by the owners from the state.

An ultimate issue in all of these cases is whether it was valid to conclude that the highest and best use of the property was for a missile range and that the values based on this use constitute just compensation to the owners.

The three groups of owners and their properties are:

The Henderson family tract consisting of 2,876.04 acres owned in fee and 4,637.-56 acres of state leased land.

The Martin family land consisting of 180.43 acres owned in fee and 4,996.85 acres of state leased land.

The Sanders family land having 1,520 acres owned in fee and 5,884.43 acres of state leased land. At the time the complaints were filed, the United States had been in possession of the subject lands for approximately 20 years under a prior lease agreement. The Commission determined just compensation.

The interest sought in the land was the same for both the fee and the lease land. It was a leasehold estate renewable for 10 years.

The testimony of the owners described the land, how it was situated, the availability of water and the value.

Two appraisers, qualified as experts, testified for the owners. Mr. Godfrey, one of these, testified that the land was not usable for ranching, subdivision, recreational uses or commercial use. He described the tracts as relatively small and isolated and all are within the outer boundaries of the missile range. Government permission is necessary to obtain access.

Mr. Godfrey concluded that the highest and best use of the property was for missile range purposes. In order to prove value for this purpose, the landowners introduced evidence of leases entered into between the United States and owners of land in the safety zone on the north side of the missile range. These were "co-use" leases under which the United States had the right to require evacuation of persons on the premises when missile firings are made. The government is thus given the right of overflight for a maximum of 25 firings, and the owners are denied the use of their lands for about 60 to 90 days in a year. The leases provide specifically for payment of moving expenses.

The government expert witness, a Mr. Harton, testified as to the highest and best use of the land and as to value. According to him, different tracts had

---

1. Although the acreage before the court is a relatively small segment of the total, it would seem likely that the price to be paid for the entire tract would be affected by the adjudication of just compensation in this cause.

different uses. The highest and best use for some tracts was grazing purposes, some for rural homesites, recreational sites and some for roadside businesses. Harton said that his conclusions were based on the assumption that the missile range did not exist and that consequently, public access was not limited and missile firings were not made. He admitted that the only use of the land at the time of taking was for use in connection with missile range operation. In Harton's opinion the value of the land was from $.10 to $.60 per acre depending on availability of water and roads.

Mr. Smith, another appraiser for the landowners, had testified that the land was worth from $1.75 to $1.94 per acre depending on the inflation factor. He derived these values from determining the average paid per acre under the "co-use" leases; he deducted 15% as the average paid in those leases for improvements; he projected the figure to a full year basis on the assumption that the government paid for 60 days use; he added an inflation factor based on either the U.S.D.A. Land Index or the Consumer Price Index.

The Commission initially awarded $1.50 per acre per year. At the same time, it maintained that it had not considered the land's prior use for missile range purposes. Nor did the Commission explain how it arrived at the figure used. Both sides objected to its report. Thereupon the Commission issued a supplemental report. This explained the basis of the award and found the highest and best use of the land was for overflight, launching and impact of missiles and similar type uses. It was not because the property had been used for such purposes, but because the government was using the land north of the range for overflight purposes. The Commission determined that the appraisals made by the landowners' expert were realistic and furnished the closest comparisons. The Commission's amounts were not as high as Mr. Smith had given because the subject lands, unlike the lands involved in the co-use leases, were

not being used as ranches. The government objected to the report, but the trial court overruled the objections and adopted the Commission's report, stating that the Commission had not considered the value of the land after the taking in arriving at just compensation.

The government contends:

1. That the Commission's finding of highest and best use is clearly erroneous in that the use as a missile range was created solely by the project for which the land was taken;

2. The "co-use" leases were inadmissible as comparable sales since the United States was the lessee and since the leases were for the same project.

### I.

### WAS IT PERMISSIBLE FOR THE COMMISSION AND THE COURT TO CONSIDER USE AS A MISSILE RANGE AS THE HIGHEST AND BEST USE?

The test to be employed in reviewing a Commission report like the present one is whether the trial court properly determined that the Commission's award was not clearly erroneous. *United States v. 20.53 Acres of Land,* 478 F.2d 484 (10th Cir. 1973); *United States v. 79.95 Acres of Land,* 459 F.2d 185 (10th Cir. 1972); *United States v. Corbin,* 423 F.2d 821 (10th Cir. 1970); *Wilson v. United States,* 350 F.2d 901 (10th Cir. 1965). Our task is then to consider the record together with the Commission's determination of highest and best use and ascertain whether the Commission's report is clearly erroneous or based on a misapplication of the law.

Highest and best use contemplates a present existing use or one reasonably likely to take place in the near future, whereby availability of this future use would have affected the market price. *Wilson v. United States,* 350 F.2d 901 (10th Cir. 1965). *See, also, United States v. 1,291.83 Acres of Land,* 411 F.2d 1081 (6th Cir. 1969); *Cameron Development Co. v. United States,* 145 F.2d 209 (5th Cir. 1944). Where, however, a

market for a particular use is created solely as a result of the project for which the land is condemned, value based on that use must be excluded. Thus, in *J. A. Tobin Construction Co. v. United States,* 343 F.2d 422 (10th Cir.), *cert. denied,* 382 U.S. 830, 86 S.Ct. 70, 15 L.Ed.2d 74 (1965), the government in carrying out a highway project condemned land which included a rock quarry. The owner sought to establish that the highest and best use of the land was for a commercial rock quarry. But there was no general commercial demand for a quarry other than in connection with the government's highway project, and so the court ruled that the Tobin Company was not entitled to obtain compensation on the basis of the land's value as a quarry.

Similar holdings in nearly identical situations are *United States v. Whitehurst,* 337 F.2d 765 (4th Cir. 1964); *Cameron Development Co. v. United States,* 145 F.2d 209 (5th Cir. 1944); *United States v. Rayno,* 136 F.2d 376 (1st Cir.), *cert. denied,* 320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 466 (1943); *United States v. 881.39 Acres of Land,* 254 F.Supp. 294 (E.D.Okl. 1966).

In a relatively early case, *United States v. Foster,* 131 F.2d 3 (8th Cir. 1942), *cert. denied,* 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138 (1943), the government took farm land for an ordnance plant. However, evidence was introduced as to the land's value for industrial purposes and the owner's appraiser testified to a value that included this element. At the same time, it was admitted that the only prospect of industrial use in the area was the existence of a government plant. It appeared that there was no prospect of any industrial use other than that of the government. The inescapable holding was that a value based on industrial use was not possible. *See, also, United States v. Catlin,* 204 F.2d 661 (7th Cir. 1953).

Another illustrative case is *United States v. Buhler,* 305 F.2d 319 (5th Cir. 1962). There the government during World War II had taken a part of a very large acreage for use as an air field with appurtenances. After the war the property went back to the owners from whom it had been taken. In September 1952, it was condemned again as an air base. The Commission determined that the land sought to be taken was enhanced by the presence of the air strips and air field drainage system. It gave this enhancement a value of $400,000. At the same time, it was shown that there was no demand for an air field except for the government. The court ruled out that the highest and best use of the property was as an air field saying that it would be pure speculation to so consider it.

In our case there is absolutely no evidence that anyone other than the government could or would use the land for a missile range. The amounts of land here in question could not provide this use because they are too small, so only if the land held by the government is combined is this property useful. Although the Commission maintained that it did not consider the use to which the land had been put by the government, by considering it as a missile range they necessarily considered its prior and future use. Hence, if they did not consider the prior use, there was no basis whatsoever for considering that the highest and best use was for a missile range.

Nor does the so-called scope of the project doctrine considered in *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943) apply. This arose in connection with the construction of a government dam. A town was built and was completed by the time of the condemnation in question. Naturally, the owner sought to bring into play the value of the town to enhance the value of the property. This effort failed, the court pointing out that the owner was not entitled to have his award enhanced by the gain realized from the special value to the condemner. As to the increment in value added by the condemnation of adjacent land, it was held that this benefit could flow only if the owner's land was not within the scope of the

project from the time that the government was committed to it. Thus, it would appear that if the presence of a government project enhanced adjoining land, the owner of the adjoining land can realize this only if the government decided to condemn his land after the value had been increased. Here the property was within the scope of the original project. The extension of the project in time added no value to the land.

## II.

WAS IT ERROR FOR THE COMMISSION TO RECEIVE EVIDENCE OF THE SO–CALLED "CO–USE" LEASES IN DETERMINING JUST COMPENSATION FOR THE LAND HERE?

█ The general rule is that evidence of prices paid by the government for the purchase, through private negotiations, of lands in connection with the project for which land is being condemned cannot be received. *Slattery Co. v. United States,* 231 F.2d 37 (5th Cir. 1956); *Evans v. United States,* 326 F.2d 827 (8th Cir. 1964). Such payments are in the nature of compromise and are not, therefore, evidentiary on what constitutes fair market value. *See Slattery Co., supra,* at 41. There is an exception if the sales were voluntary. *Transwestern Pipeline Co. v. O'Brien,* 418 F.2d 15 (5th Cir. 1969). One witness testified that these leases were voluntary, but he also admitted that the government was eager to obtain the leases without using the condemnation process.

█ Our court has ruled that evidence of prices paid in sales to a condemner is not generally admissible; that such evidence is frowned upon and great caution should be used in connection with it since it is an inaccurate indicator of market value. *See United States v. 25.02 Acres of Land,* 495 F.2d 1398 (10th Cir. 1974) at 1403.

█ A further reason for rejecting the "co-use" lease evidence is that these interests are dissimilar to the interest here. Thus, these should be given little weight since the dissimilarity is great. As has been noted, the tracts were small and they could be used only for the purpose of supplementing the area used by the missile range. The land in the "co-use" leases was ranch property with improvements and different prices were paid per acre to different owners. Mr. Smith had to make extensive adjustments in order to have similarity. We cannot, therefore, approve the use of this evidence as comparable and give it great weight.

## III.

WHAT GUIDELINES ARE TO BE EMPLOYED IN THIS KIND OF FACT SITUATION?

Finally, we are fully aware that this is an extraordinary and difficult situation that the Commission and the court had to deal with because the land had little, if any, market value. In such a situation some other standard has to be used for determining just compensation. *See United States v. Fuller,* 409 U.S. 488, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973); *United States v. Miller,* 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943); *United States v. 20.53 Acres of Land,* 478 F.2d 484 (10th Cir. 1973).

The fact that it has very little value cannot justify the Commission's using an inapplicable measure, namely, its highest and best use being a missile range. We must, therefore, hold that the Commission, and in turn the court, erred in finding that the highest and best use was a missile range and in relying heavily, if not entirely, on the "co-use" leases as evidence of value.

Because of this, the judgment must be and is hereby reversed and remanded for further proceedings. On remand a different method for determining just compensation must be adopted. *See, for example, Sill Corp. v. United States,* 343 F.2d 411 (10th Cir.), *cert. denied,* 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965), wherein it was said:

We know, of course, that the law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation. . . . It may be based upon comparable sales, reproduction costs, capitalization of net income, or an interaction of these determinants.

343 F.2d at 416.

*See United States v. Sowards,* 370 F.2d 87 (10th Cir. 1966), which added the following statement:

But, whatever method is employed, the evidence offered must have a bearing upon what a willing buyer would pay a willing seller for the property on the date of the taking. . . . The lack of comparable sales does not change the measure of compensation; other evidence may be sufficient for the determination of value.

370 F.2d at 90.

*See, also, United States v. Corbin,* 423 F.2d 821 (10th Cir. 1970), wherein we said:

It is stipulated that there are no comparable sales available. Therefore, the standads available to determine fair market value of the fish farm element were restricted to two approaches: (1) The reproduction cost minus depreciation, and (2) The capitalization of net income approach.

423 F.2d at 824.

The court should bear in mind that we are here concerned with leasehold interests and this also is an important factor.

We are saying then that the amount of the award is grossly excessive and that it must bear a realistic relationship to reasonable market value.

For the reasons stated, the judgment is reversed and the cause remanded for further proceedings in accordance with the directions heretofore given.