BARRETT, Circuit Judge.
John P. Caporal, et a 1, (Caporal) seeks review of a money judgment representing the fair market value arising from condemnation proceedings initiated by the United States. Caporal was awarded $610,000 as just compensation for the taking of his building and land condemned. L. L. Ridge-way Enterprises, Inc. (Ridgeway), a tenant in Caporal’s building, was awarded $45,000 for loss of its leasehold estate as of the date of taking, which sum was offset against Caporal’s $610,000 award. The United States was decreed ownership in and to the alleyway abutting Caporal’s property in consideration of $1.00 paid to the City of Oklahoma City, Oklahoma. A recitation of pertinent facts should facilitate our review.
Caporal purchased the real property here involved on August 18, 1970 for $190,000. The property, hereinafter collectively referred to as “Parcel 9,” is four lots in downtown Oklahoma City, Oklahoma, of approximately 14,000 square feet. The improvement thereon consisted of a modern three-story office building of some 40,300 square feet. The building was fifty years old. However, Caporal had recently spent $130,-000 remodelling it and all parties to this action concede that it was a good, attractive office structure. An alleyway abutted the building. One-half of the alleyway adjacent tó “Parcel 9” measured 10,000 square feet. Throughout the proceedings in the district court, the alley was referred to as “Parcel 10.” We will accordingly refer to the alleyway as “Parcel 10.”
The United States, also hereinafter referred to as Government, instituted the subject condemnation proceedings on April 25, 1974 encompassing one square block of downtown Oklahoma City, which included Parcels 9 and 10. The notice of condemnation afforded Parcel 9 an “estimated just compensation for the property taken” of *115 $450,000. Caporal was named as the “purported owner.” The same notice afforded Parcel 10 an “estimated just compensation for the property taken” of $1.00. The City of Oklahoma City was named as the “purported owner.”
Pursuant to the notice of condemnation, Caporal filed timely “objection(s) or defense^) to the taking.” On September 17, 1975, three court appointed commissioners conducted an evidentiary hearing on the issue of the fair market value of Parcel 9. Prior thereto, on July 24, 1975, the district court entered an order which included the following:
The issue presently before this court is who is the owner of said alley in Block 39, and whether or not the sum of $1.00 deposited by the United States of America is adequate consideration for the condemnation of said alley.
The defendants, Caporal and Karey, assert that they are the owners of the land in that portion of the alley which abutts their property . . . . The City of Oklahoma City claims to be the owner of the alleyway . .
The Court, . . . finds that:
1. The Government has the right to condemn said alleyway.
2. That there remains, after the taking of the alley, roadways in the area; therefore a substitute facility is not required.
3. That in light of this finding for lack of need of a substitute facility, the sum of $1.00, nominal compensation to the City of Oklahoma City, is adequate. [Appendix, Part I, pp. 15-16.]
At the hearing to determine the fair market value of Parcel 9, the commissioners heard testimony of witnesses, including: Caporal’s first appraiser, H. A. Eckhard, who appraised Parcel 9 at $1,003,300 by relying “heavily on the income approach to value but did not provide the Commission with any cost figures”; Caporal’s second appraiser, Woody Hunt, who valued Parcel 9 at $1,060,000 and who “also relied heavily on the income approach and gave no other data relative to cost or market as it related to the property overall”; Caporal’s testimony that he acquired Parcel 9 for $190,000, remodelled it at an expense of $140,000, and that the prior owner had remodelled the property in 1957 at an expense of $575,000; William Winter, an appraiser for the United States, who valued the property at $500,-000, by utilizing the income approach to value method together with a market data method; George Noah, an appraiser for the United States, who appraised the property at $540,000, and who relied heavily on the income approach and who also employed the Elwood technique of capitalization.
In valuing Parcel 9 at $610,000 the Commission noted:
All of the witnesses who testified about the subject property were in agreement that the highest and best use of the property was the use it was being used for, to-wit: a commercial building. Also, while most of the expert witnesses used the cost and market approaches in determining value, they all agreed that the income approach for the subject property was the most reliable.
* * * # * *
It is obvious from the award the commission gave greater weight to the testimony of plaintiff’s value witnesses than it did to the defendants. That decision was based upon, but not limited to the following considerations:
(1) Appearance of the witness;
(2) Qualifications;
(3) Knowledge of subject property;
(4) Knowledge of comparable rents and vacancies in the Oklahoma City area;
(5) Use of accepted appraisal techniques;
(6) Reasonableness of the use of appraisal approaches to value.
[Appendix, Part I, pp. 41-42.]
This report was filed November 14, 1975. A supplemental report, filed July 26, 1976, valued Ridgeway’s leasehold estate in Parcel 9 at $45,000.
Caporal lodged objections to both commission reports. On September 7, 1976 the *116 district court entered judgment by adopting the Commission’s valuation of $610,000 representing Caporal’s interest in Parcel 9 and ' the valuation of $45,000 representing the Ridgeway leasehold estate. A “supplemental judgment” of November 24, 1976 ordered that Caporal be paid $610,000 for Parcel 9. A “Final Judgment — Parcel No. 10” filed November 30, 1976 directed that “the vesting in Plaintiff of title to the property set forth above as Parcel No. 10 is hereby ordered and decreed,” and that “just compensation to be paid by Plaintiff for the taking of the aforementioned Parcel No. 10 is the sum of $1.00.”
On appeal Caporal contends, with respect to his feehold interests: (1) the court erred in its instructions to the commissioners by failing to provide for the submission of award representing the appellants’ interest and right to the alley adjacent to their property; (2) the court erred in ordering the Government to deposit money into the Registry of the Court without interest; (3) the commissioners disregarded the testimony of all witnesses and appraised the property themselves; (4) the commissioners erred in requiring testimony relative to the purchase price and remodelling costs; and (5) the trial court erred in overruling the objections and exceptions to the reports of the commissioners. Caporal also appeals the $45,000 valuation afforded Ridgeway’s leasehold estate and argues: (1) the court erred in interpreting, the non-assignability clause contained in the lease agreement; (2) the testimony of Ridgeway was not sufficient to justify any award; (3) the court improperly instructed the commissioners; (4) the commissioners neglected to state how they arrived at their award; and (5) the court erred in not sustaining Caporal’s exceptions to the commissioners’ findings.
Feehold Interests (a)
Caporal argues that the .court erred in its instructions to the commissioners by failing to provide for the submission of his interest and right in the alley, Parcel 10, adjacent to his property. As noted, supra, on July 24, 1975, the district court entered an order effectively holding that Oklahoma City owned Parcel 10 and directing the United States to pay $1.00 as nominal compensation for the taking. At the hearing before the Commission in September, 1975, Capo-ral was not permitted to address his alleged ownership rights in Parcel 10; furthermore, the commissioners were not instructed relative thereto. On November 30, 1976, the district court entered a final judgment decreeing that title to Parcel 10 had vested in the United States. No steps or proceedings have been undertaken by Oklahoma City or the United States to vacate Parcel 10. As of the date of oral arguments before this court, the easement as an alley (Parcel 10) had not been vacated, although a federal office building now encompasses the entire block which the alley previously bisected.
Caporal argues that the adjacent lot owners to the alley “have been arid are now the owners since they obtained their title from their south lot line to the center of said alley, . . . that the City of Oklahoma City has no interest therein except to hold the surface of the same in trust for the use of the public” and that the “City has no right to issue a deed conveying the same.”
We hold that the district court did not err in declining to instruct the Commissioners on Caporal’s alleged interest in the alleyway, and in finding that the $1.00 paid to Oklahoma City therefor was adequate.
Oklahoma law provides that title to streets and alleys is held by municipalities in trust for the public. Whitaker v. Town of Tipton, 426 P.2d 336 (Okl.1967); Harper v. Oklahoma City, 208 Okl. 307, 255 P.2d 933 (1953). It is true, as Caporal argues, that owners of property adjacent to alleys have special interests therein. Hedrick v. Padon, 333 P.2d 552 (Okl.1958), identified these interests:
By reason of the location of their lot with reference to the involved part of the alley, the plaintiff had an interest in the alley, not only as a public way, but also as a right “peculiar to itself, in which the general public has no interest, and (which) exist in the nature of an incorpo *117 real hereditament attached to said lots, and (which) is a valuable property right.” Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192, 199.
333 P.2d, at 555.
The interest of an adjacent landowner to an alleyway is perfected when the alleyway is vacated, at which time the alleyway becomes “the private property of the adjacent lot owners on each side in proportion to the frontage of their real estate.” Arkansas Valley & W. Ry. Co. v. Bullen, 31 Okl. 36, 119 P. 414 (1911). Thus, once an alleyway has been properly vacated, an owner of realty adjacent thereto may separately convey the realty, including his reverted interest in the alley. Brownrigg v. Lyons, 205 Okl. 198, 236 P.2d 482 (1951). However, an alleyway must be actually vacated before the title of the adjacent property owner arises by reason of the reversionary interest. In Jones v. Oklahoma City, 193 Okl. 637, 145 P.2d 971 (1944) the court held that a city ordinance confirming a grant to a railroad company of a right of way through an alley, did not constitute a vacation of the alley, and that owners of abutting lots did not thereby acquire any reverter or right of entry interests in the alley. Thus, because in the case at bar the alley was not vacated, Caporal could not have acquired a vested fee ownership therein. Caporal’s rights in the alley property must be considered as of the date of the taking. See: Garibaldi v. Oklahoma Industrial Finance Corporation, 543 P.2d 555 (Okl.1975). On the date of the taking, Caporal had a defeasible fee interest in the alley, the perfection of which was predicated on the vacation of the alley. In view of the fact that the alley has not been vacated, Caporal’s reversionary interest has not ripened. Thus, in our view, should the alley be vacated at some future date, the United States, as successor in ownership to Parcel 9, would acquire fee title to the alley (Parcel 10).
Caporal’s contention that Oklahoma City was not empowered to issue a deed conveying its interests in the alley to the United States must be rejected. Although a municipality cannot alienate streets and alleys it holds in trust for the benefit of the public, State ex rel. Burk v. Oklahoma City, 522 P.2d 612 (Okl.1973), when, as here, there is no need for the city to continue to hold the alley for the benefit of the public in accordance with the purpose of its dedication and maintenance, a city is not prohibited from alienating its interest. The subject alley was dedicated and maintained by the city for commercial use. That use terminated when the United States acquired the entire block for public building purposes. Furthermore, when a street or alley is condemned and an actual taking effectuated, the remuneration to a municipality is predicated on the costs of providing necessary substitute facilities. This proposition was discussed in Woodville v. United States, 152 F.2d 735 (10th Cir. 1946), cert. denied, 328 U.S. 842, 66 S.Ct. 1021, 90 L.Ed. 1617 (1946):
Under the Fifth Amendment to the Constitution private property may not be taken for public use without payment of just compensation. It is well settled that under this constitutional guaranty the government must pay a city just compensation for streets, sidewalks or alleys when taken under the power of eminent domain. It is obvious that just compensation to a city for its street taken by condemnation cannot be measured by the ordinary standards of value. It does not own the streets. Under Oklahoma law the fee title thereto is in the owners of the abutting property. All it has is an easement in the streets, sidewalks and alleys, impressed with the obligation on its part to maintain them for public use. Its interest in such easements is totally unlike property of a private corporation. Just compensation in a condemnation proceeding for the taking of streets and alleys cannot be measured by the same standards as compensation for the taking of private property.
It is well settled that the compensation to which a city is entitled when its streets are condemned is the cost of providing necessary substitutes therefor. But where a city is not required to provide substitutes and it is not necessary to do *118 so, it has suffered no financial loss and is therefore not entitled to substantial damages for the taking of such public ways. 152 F.2d, at 736-737. '
Applying the above standard to the case at bar and recognizing that the district court specially found that “there remains, after the taking of the alley, roadways in the area; therefore a substitute facility is not required,” which finding is not challenged, we hold that the $1.00 nominal compensation paid the City of Oklahoma City was adequate. We assume that for curative title purposes, proceedings will be undertaken in order to formally and legally vacate the alley in issue in accordance with the laws of Oklahoma.
(b)
Caporal contends the trial court erred in ordering the Government to deposit money into the district court’s registry for his benefit without earning interest. At the time of the notice of taking, the United States deposited $450,000 in the court registry representing just and adequate compensation for Parcel 9. Thereafter, the Commission valued Parcel 9 at $610,000. The court then ordered that the additional sum of $160,000 be placed in the registry for the benefit of Caporal. For reasons unknown, the court apparently directed that these moneys be deposited without interest. Caporal asserts that he is entitled to interest on the sum of $160,000 from the date of the taking. On appeal, the United States concedes this point. On page 3 of its brief, footnote 1 the United States concedes:
The United States has no objections to an amendment of the judgment to allow the landowners’ interest at 6% on the deficiency of $160,000 from April 25, 1974, (the date of taking) to the date the deficiency was paid to the landowners.
(c), (d), and (e)
Caporal contends that the Commission disregarded the testimony of all witnesses and appraised the property themselves, and that they erred in requiring testimony relative to the purchase price of Parcel 9 and remodelling costs attendant thereto. He further contends that thereafter the trial court erred in overruling his objections and exceptions to the Commission reports. We hold that there is sufficient evidence establishing that the commissioners properly reviewed all of the evidence and that the trial court did not err in overruling Caporal’s objections and exceptions to the reports.
The findings of a commission convened in a condemnation proceeding must be accepted by a reviewing court unless held to be clearly erroneous. United States v. 46,672.96 Acres of Land, More or Less, 521 F.2d 13 (10th Cir. 1975); United States v. 20.53 Acres of Land, 478 F.2d 484 (10th Cir. 1973); United States v. Brinker, 413 F.2d 733 (10th Cir. 1969). Commissioners must, of necessity, consider all relevant evidence in creating a record from which they can extract findings which must be supported by substance rather than conclusion. United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); United States v. 20.53 Acres of Land, supra. The Commission’s conclusion that Parcel 9 had a fair market value of $610,000 as of the date of taking, even though predicated on sharply conflicting evidence, was nevertheless not erroneous. Condemnation proceedings seldom give rise to valuations nicely grouped. In United States v. Corbin, 423 F.2d 821 (10th Cir. 1970) we upheld a $78,000 award for a fish farm and improvements based on valuations ranging from $60,000 to $153,-000. No less a standard applies here.

Leasehold Interests

Caporal’s allegations of error relative to the $45,000 judgment awarded Ridgeway for its leasehold estate in Parcel 9 are aimed at the proposition that the evidence is insufficient to justify any award. These allegations are without merit. There is substantial evidence substantiating the $45,000.00 value attributed to the leasehold. Furthermore, we are not unmindful that Caporal contended for a higher leasehold valuation for the ascertainment of his total condemnation award. As Appellee Ridgeway pertinently observed:
*119 Every appraiser who testified in either phase of the case placed a higher economic rent, that is the fair market rental value, then (sic) that reflected by the lease provisions themselves. Even Mr. Eckhard (Caporal’s appraiser) found the space worth more than that at the first hearing, but less than the contract rate at the second hearing.
Clearly, this lease was a favorable one to Ridgeway. But apparently the fee owners want to have it both ways. They want to have their condemnation cake and eat it, too. For the purpose of the fee award, this rental space is valuable rental space, but for the purpose of calculating a value of the lease estate interest when that is at issue it is not such an expensive rental space.
[Brief of Appellee Ridgeway, page 16.] The $45,000 award to Ridgeway for its interest in the leasehold estate at the time of the taking was not clearly erroneous. Ca-poral’s tactics of affording the leasehold area a higher valuation for fee interest award and subsequently affording the same area a lower valuation for leasehold interest award are less than proper and exemplary.
WE AFFIRM the district court’s judgment in all respects with the exception of that portion of the court’s order referred to herein under Feehold Interests, subsection (b), wherein the Government was directed to deposit the additional sum of $160,000.00 into the court’s registry for Caporal’s benefit, without interest. In light of the applicable law and the Government’s concession, the judgment allowing Caporal the additional sum of $160,000.00 without interest is modified and amended directing, ordering and allowing Caporal interest on the aforesaid sum of $160,000.00 at the rate of six percent (6%) per annum from and after date of April 25, 1974, to the date the aforesaid deficiency of $160,000.00 was paid. As thus modified and amended, the district court’s judgment is affirmed.