UNITED STATES of America,
Plaintiff, Appellee,

v.

177.51 ACRES OF LAND, MORE OR LESS, SITUATED IN the TOWNS OF EASTHAM, TRURO, AND WELLFLEET, COUNTY OF BARNSTABLE, COMMONWEALTH OF MASSACHUSETTS, et al., Defendants, Appellees.

Sallie E. Johnson Lappanen, et al.,
Defendants, Appellants.

No. 83–1043.

United States Court of Appeals,
First Circuit.

Argued June 9, 1983.

Decided Aug. 29, 1983.

John D. Hallisey, Orleans, Mass., for defendants, appellants.

Joseph McGovern, Asst. U.S. Atty., Boston, Mass., with whom Carol E. Dinkins, Asst. Atty. Gen., William F. Weld, U.S. Atty., Boston, Mass., Jacques B. Gelin, Attorney, Dept. of Justice, and Claire L. McGuire, Attorney, Dept. of Justice, Washington, D.C., were on brief, for the United States of America.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and TORRUELLA,* District Judge.

BOWNES, Circuit Judge.

This is a consolidated appeal by landowners from district court judgments awarding compensation for twelve tracts of land condemned by the United States to expand the Cape Cod National Seashore. The awards were based on the reports of a three-member commission appointed pursuant to Federal Rule of Civil Procedure 71A(h). It is undisputed that the highest and best use of the land in question is for residential homesite development. On appeal the landowners argue that the district court erred in awarding compensation in the amounts de-

---

* Of the District of Puerto Rico, sitting by designation.

termined by the commission because of several alleged flaws in the commission's analyses. We disagree and affirm the district court's judgments.

## I. Tract 25T–5721

■ We can dispose of the landowners' claim with respect to one of the twelve tracts, denominated Tract 25T–5721, in rather short order. We have no jurisdiction to address any of the issues raised concerning this tract because the district court has not rendered a final judgment adopting, modifying, or rejecting the relevant commissioners' report. *Cf. Sick v. City of Buffalo,* 574 F.2d 689 (2d Cir.1978) ("direct appeal does not lie from trials before magistrates or masters, at least where the federal judge has not authorized entry of final judgment at the time of the reference with the parties' consent" (footnote omitted)), *cited with approval in, United States v. Vega,* 678 F.2d 376, 379 (1st Cir.1982) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 n. 1 (1st Cir. 1980). The requirement of a district court judgment for a court of appeals to have jurisdiction follows from the fact that under the Federal Rules a commission plays the same role as a master. Fed.R.Civ.P. 71A(h).[1] Underlying the Supreme Court's delineation of standards governing the preparation of commissioners' reports in condemnation cases was its recognition of the importance of district court review of these reports. *See United States v. Merz,* 376 U.S. 192, 197–200, 84 S.Ct. 639, 642–644, 11 L.Ed.2d 629 (1964) (standards geared to facilitating district court review). Correspondingly, the role of a court of appeals in a condemnation case is limited to reviewing the determinations of the district court in its adoption, modification, or rejection of the commissioners' report and does not constitute a review of the determinations of the commission as such. *See, e.g., United States v. Corbin,* 423 F.2d 821, 824 (10th Cir.1970); *O'Brien v. United States,* 392 F.2d 949, 952 (5th Cir.1968). Without a district court judgment we are unable to perform this role with respect to Tract 25T–5721 and will have to remand this case to that extent.

## II. The Status of Pond Road

■ The owners of Tract 25T–5722 maintain on appeal that the town of Truro, and not private landowners, are legally obligated to maintain Pond Road, a road adjacent to the tract. They allege that the district court erred in adopting a commission report which valued Tract 25T–5722 on the assumption that private landowners would be responsible for maintaining the road. In its analysis the commission deducted from the tract's gross value $1,000 for the cost of improving Pond Road to the extent required for the projected use of the tract and the landowners argue that this resulted in an undervaluation.

The Pond Road issue is a familiar one. In *United States v. 125.07 Acres of Land,* 667 F.2d 243 (1st Cir.1981) (*Pond Road I* ), we vacated the district court's judgment adopting the commissioners' valuation of Tract 25T–5723 in another National Seashore condemnation proceeding and remanded for a determination of the legal status of Pond Road and who had the maintenance obligation. This determination rested on state law. On remand the district court rejected the landowners' claims and

---

1. In pertinent part Rule 71A(h) provides:

   [I]f there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court.

the case returned to us on appeal. We affirmed the district court's decision that it was proper to deduct costs for improving Pond Road in valuing the adjacent land because the landowners had failed to sustain their burden of proving that the town was legally obligated to maintain the road. *United States v. 125.07 Acres of Land,* 707 F.2d 11 at 15 (1st Cir.1983) (*Pond Road II*).

The question now becomes whether our prior determination that the town of Truro has no obligation to maintain Pond Road is binding against the landowners in this case. Technically, the doctrine of collateral estoppel, or issue preclusion, does not apply here because these landowners were not parties to the proceedings in *Pond Road I* and *Pond Road II. See* Restatement (Second) of Judgments § 27 (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* ¶ 4449 (1981) ("The basic premise of preclusion is that parties to a prior action are bound and nonparties are not bound."); *cf. United States v. Smith,* 307 F.2d 49, 56 (5th Cir.1962) (County's earlier recovery of full compensation does not bar a nonparty to that earlier condemnation case from claiming additional compensation.). Since our holding in *Pond Road II* was based on the failure of the landowners in that case to sustain their burden of proof it would seem particularly unjust to impose that holding on the landowners before us.

In *Pond Road I,* however, we did recognize that issues regarding Pond Road were likely to recur in future cases involving land condemned for the National Seashore and that their resolution on remand in that case "would impose a degree of order and certainty in these proceedings." *Pond Road I,* 667 F.2d at 253. Indeed, in this setting we think that the doctrine of stare decisis should be invoked to give our resolution of the Pond Road issue in that case precedential value. *See* C. Wright, A. Miller & E. Cooper, *supra,* ¶ 4449, at 417. The manner in which some courts have analyzed the legal question of a patent's validity illustrates such use of prior decisions against a

nonparty. For example, the Seventh Circuit has held that once a court has ruled that a patent is valid, a nonparty to that action challenging validity in a subsequent action "has the burden of presenting 'persuasive new evidence' of invalidity and demonstrating that there is a 'material distinction' between the cases." *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 547 F.2d 1300, 1302 (7th Cir.1976) (citations omitted); *see also American Home Products Corp. v. Lockwood Manufacturing Co.,* 483 F.2d 1120, 1125 (6th Cir.1973) (A prior adjudication of validity enhances the statutory presumption of validity and "should be followed 'unless the court is convinced of a very palpable error in law or fact.'" (citations omitted)). The same considerations of stability in the law and judicial economy which fostered these decisions, *see Illinois Tool Works,* 547 F.2d at 1302, are pertinent in the case before us and suggest that our earlier resolution of Pond Road's legal status should be given precedential effect.

The owners of Tract 25T–5722 have presented us with no new analysis concerning Pond Road. In fact their brief, prepared by the same attorney who represented the landowners in *Pond Road II,* relies entirely upon the brief that was submitted to this court in that earlier case.[2] Although the parties filed their briefs for the present appeal before *Pond Road II* was announced, they presented oral arguments after that decision and failed at that time to present any new arguments concerning the road or to indicate that they would be able to offer such arguments if given additional time. Under these circumstances we see no good reason to deviate from our holding in *Pond Road II* that the town of Truro had no legal obligation to maintain Pond Road. Thus, the district court did not err in approving the commission's deduction of road improvement costs in valuing Tract 25T–5722.

### III. *The Commission's Reliance upon Earlier Valuations*

The next error alleged by the landowners is that the commission's value determina-

---

**2.** We granted leave to supplement the record in this case with copies of the briefs and appendix submitted in *Pond Road II.*

tions were based on an arbitrary formula derived from earlier valuations rather than being based on the evidence presented in each individual case. This approach allegedly violates due process and conflicts with the case law concerning Federal Rule 71A(h). The tracts involved are 25T–8500, 25T–5714, 25T–5713, 25T–5760, 25T–5763, 25T–5766, and 25T–5722; the first six of these tracts were the subject of one commissioners' report and the last tract was analyzed in a separate report.

■ This issue is also familiar because the landowners raised it in *Pond Road I.* In that case we set out a detailed statement of our scope of review in condemnation cases. In essence, we must determine if the commissioners' report as adopted by the district court is clearly erroneous. Also, a "scope of the evidence" rule requires that we affirm a compensation award if it falls within the range of the value opinions offered by the adverse parties' expert witnesses. *Pond Road I,* 667 F.2d at 249–51. In our *Pond Road I* opinion we offered for the guidance of district courts in future cases some observations on the role of prior awards in a commission's analysis of a given tract's value. Without repeating these observations in their entirety, our basic message was that reference to other awards would be appropriate so long as it remained "a basis for comparison and [did] not become the principal support for the award." *Id.* at 251 n. 19.

■ In the present case the district court issued its instructions to the commission and the commission issued its reports on the tracts in question before we decided *Pond Road I.* Not surprisingly, the commission's analytical approach in these reports resembles its approach in the report we reviewed in the earlier case. In these reports, as adopted by the district court, we perceive the same tendency that caused us concern in *Pond Road I* to look first at the other cases and then consider the evidence at hand. *See id.* Like the report in that case, however, these reports are not clearly erroneous and do document the commission's "path ... through the maze of conflicting

evidence" as required by *United States v. Merz,* 376 U.S. 192, 198, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964).

In its report on the first six tracts in question the commission discussed the expert opinion testimony offered on behalf of both the landowners and the government. Due to gaps in the evidence presented, the commission rejected the landowners' proposed use of the tracts for sixteen or more homesites and concluded that problems with access would make such intense use infeasible. It also rejected as not sufficiently similar the comparable sales offered in evidence by both sides. The commission's ultimate award was within the very wide range of the evidence, although much closer to the evidence provided by the government. This award was consistent with the commission's view that the tracts could only be developed into a relatively small number of homesites.

In its report on Tract 25T–5722 the commission similarly discussed the testimony provided by the experts on both sides. One of the government's witnesses valued the tract at $26,000 by starting with an estimated value derived from a comparable sale and discounting this amount due to the tract's access problems. The commission ultimately adopted this opinion of the tract's value because its own analysis of the tract yielded a similar figure and thus suggested that the government witness' approach had validity. The commission's own analysis borrowed from its valuation in an earlier case to the extent that Tract 25T–5722 was comparable to the earlier tract. It was, however, tailored to this tract at least to the extent that it assigned a higher value to one portion of the tract which, although of small size, was attractive in terms of the road frontage it provided. Interestingly, the commissioners' report on the earlier tract was introduced into evidence during the trial on Tract 25T–5722 by the landowners who now complain about the commission's reliance on other cases.

We cannot say that the district court erred in adopting these reports, both of which documented the commission's analysis of the evidence presented and resulted in

awards within the range of that evidence. The reports satisfy the requirement of a case-by-case analysis without resort to arbitrary formulas to the same extent—actually to a greater extent with respect to Tract 25T–5722—as did the report we considered in *Pond Road I*. In no way do these reports approach the conclusory nature of the commission report reviewed in *United States v. 20.53 Acres of Land*, 478 F.2d 484, 486–87 (10 Cir.1973), a case the landowners rely upon heavily in their brief. In that case the commission's value determination appeared suddenly out of thin air with absolutely no supporting analysis.

IV. *Objections to Specific Aspects of the Commission's Analyses*

The landowners' remaining assignments of error are of narrower scope; they take issue with specific conclusions the commission reached in the course of performing its analyses. Our review of the commission reports as adopted by the district court leads us to conclude that as to these issues the commission's conclusions and methods of analysis were based on the evidence and were not clearly erroneous.

■ The landowners' first argument concerns the method of allocating costs for access and utilities. They maintain that once the commission has valued a tract by deducting road improvement and utilities costs it must assume that these road and utilities improvements have been made when it subsequently values other tracts abutting the same road. The landowners argue that because the commission failed to incorporate such an assumption into its analyses it deducted the same costs repeatedly each time it valued a new tract and artificially undervalued the tracts in question.

The commission stated its reason for rejecting the landowners' approach in its report on Tracts 25T–5725 and 25T–5226:

It is our opinion that each tract must be evaluated independently of the other tracts, in the absence of evidence that two or more owners were acting in concert, or that there was a joint plan of development where by road and utility expenses would be jointly shared. The prospective purchaser of either or both of the subject tracts, if he wished to develop them as homesites, could not rely on other owners sharing such expenses, for they might be content to allow their land to remain undeveloped for many years. Your Commission, in valuing [the earlier tract] made allowances for what it would cost to improve the road and bring utilities to that tract. Obviously a willing and intelligent buyer would take such costs into consideration in coming to a rational judgment as to what he would pay for the property. That report did not change the physical conditions as they exist, and to treat the situation as if the road had been improved and utilities introduced is an unwarrantable assumption.

This explanation of the commission's approach is reasonable. More importantly, the commission's reports state that its analyses did not result in multiple deductions of the same road improvement and utilities costs because in valuing each tract on its own the commission only deducted those costs that would be necessary to serve that tract in its anticipated development and not the neighboring tracts as well. Thus, although a dirt path might only have to be cleared of tree stumps and overgrowth to provide access for the homes on one tract, a fully paved and widened road might be necessary to serve the homes built on all the tracts in the area. For example, the commission estimated that the cost of improving Pond Road to serve Tract 25T–5722 as developed would be $1,000 while it appeared that it would cost $84,000 to make the road adequate if all the tracts abutting it were to be developed. Given this situation the commission adopted the appropriate course in analyzing each tract on its own and deducting only those road improvement and utility costs that would be necessary to serve that individual tract in its anticipated use.

■ As to Tracts 25T–8500, 25T–5714, 25T–5713, 25T–5760, 25T–5763, and 25T–

5766, the commission received evidence of joint development and analyzed access costs accordingly. These tracts were held in common ownership and the parties had stipulated that expenses for road improvements and utilities were to be apportioned as if one system had been built and paid for at one time. The commission accepted this evidence of joint development and thus treated all six tracts as one unit for the purposes of road and utilities costs. It ultimately deducted from gross value one amount "to do what is necessary at a minimum, to render the property marketable." The landowners have no basis for complaint here.

■ The landowners next argue that the district court erred in adopting the commission's report as to Tract 25W–4034 because the commission's finding that the highest and best use of this tract was for a single homesite was not supported by the evidence. We first note that the commission's award of $20,000 for this tract was within the scope of the evidence; the landowners' appraiser analyzed the tract as a two-lot residential subdivision with a value of $27,000 and the government's appraiser analyzed it as a one-lot homesite worth $20,000. The landowners now contend that the commission erred in accepting the one-lot conclusion because the government had admitted that local zoning laws would have permitted a two-lot subdivision.

The commissioners' report clearly indicates their concern that, although two lots would pass muster under the zoning laws, this development scheme might not be economically feasible due to the physical characteristics of the tract. The tract consisted of about one acre and testimony indicated that eighty-five percent of it was steeply sloping. There was testimony that because of this steep slope it would be very expensive to provide access to one of the lots proposed by the landowners. As a result the commission apparently thought it would be more economical to forego a second lot and that the tract would have more value if

used for one large lot. The commission was not clearly erroneous in concluding that the landowners did not provide enough evidence to prove the economic feasibility of their two-lot approach and, if anything, should be commended for looking beyond the mere requirements of the local zoning provisions.

■ The landowners' final argument is that the commission erred in valuing Tracts 25T–5725 and 25T–5726 as if they were landlocked. Although Tract 25T–5724 separated these tracts from Pond Road, the landowners contend that access over this tract would have been readily available. The commission's ultimate award was within the scope of the evidence; it accepted the government appraiser's testimony both as to value and as to the use of the land for assemblage with other tracts for the purpose of future residential development. The commission concluded that access over Tract 25T–5724 was questionable because this tract was not entirely under common ownership with the subject tracts and because a right-of-way over it would most likely interfere with the highest development of that tract. There was no clear error here.

In conclusion, we affirm the district court's judgments with respect to the tracts in issue. The district court's adoption of the commissioners' reports clearly passes muster under our limited scope of review as set forth in *Pond Road I.* We remand to the district court for entry of judgment as to Tract 25T–5721.

*Affirmed in part and remanded in part.*