UNITED STATES of America,
Plaintiff, Appellee,

v.

**7.92 ACRES OF LAND, MORE OR LESS, SITUATED IN The TOWNS OF PROVINCETOWN AND TRURO, COUNTY OF BARNSTABLE, COMMONWEALTH OF MASSACHUSETTS, et al., Defendants, Appellees.**

**Grace B. Bessay, Defendant, Appellant.**

No. 84–1860.

United States Court of Appeals,
First Circuit.

Argued March 5, 1985.
Decided July 31, 1985.

James M. Hughes, Hingham, Mass., with whom Devin & Drohan, P.C., Hingham, Mass., was on brief for defendant, appellant.

Evan Slavitt, Asst. U.S., Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for the U.S. of America.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge and RE,* Judge.

RE, Chief Judge:

Appellant, Grace E. Bessay, appeals from two related judgments of the United States District Court for the District of

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

Massachusetts which condemned two tracts of land, approximately 7.92 acres, within the Cape Cod National Seashore in Provincetown, Massachusetts, on the Atlantic Ocean side of the cape. Although this appeal pertains to only one action, since there were two tracts of land condemned pursuant to Rule 71A of the Federal Rules of Civil Procedure, two separate judgments of condemnation were issued by the district court.

Initially, the district court, in granting the United States' motion for partial summary judgment, rejected Bessay's contention that her land was exempt from condemnation as "improved property" under the Cape Cod National Seashore Act, 16 U.S.C. § 459b (1982) (the Act). Subsequently, in a memorandum opinion dated July 2, 1984, the district court adopted a report submitted by a fact-finding land commission (Commission) which established that two thousand dollars ($2,000) was the fair market value of Bessay's land.

Two questions are presented on this appeal: (1) whether Bessay's two tracts of land are exempt from condemnation by the Secretary of the Interior under the "improved property" exemption of the Act, 16 U.S.C. § 459b-3; and, if not, (2) whether the amount of two thousand dollars was "just compensation" for the taking of Bessay's property, as required by the Fifth Amendment.

Since we hold that the district court correctly held that Bessay's land was not "improved property" under the Act, and that the amount paid to Bessay for her land was "just compensation," we affirm.

### Facts

Grace Bessay is the owner of several parcels of land located within the Cape Cod National Seashore. The two tracts of land in dispute are located on the shore of the Atlantic Ocean in the northern part of Provincetown, Massachusetts. They are contiguous and consist of four lots, according to a subdivision plan entitled "Pilgrim Park Tract," recorded on January 31, 1899, in the Barnstable County Registry of Deeds. The subdivision plan indicates that the larger parcel, tract 4-0001, consists of three lots, two adjoining each other, and the third separated from the other two by a "paper road" referred to as Ocean Avenue. The smaller parcel, tract 4-0003, consists of a single lot which adjoins the separated lot of tract 4-0001. Bessay acquired both tracts in March 1963. The two tracts, together with four other tracts she owned in the neighboring town of Truro, were condemned on August 27, 1975.

During a hearing held by the Commission, Bessay testified that when she acquired the two tracts of land in 1963 there existed the remains of a structure which had been built in the 1930's. Bessay testified that, to the best of her knowledge, the structure was still standing on September 1, 1959, the effective date of the "improved property" section of the Act. Bessay also stated that, after 1959, but prior to 1963, the structure was partially burned. Sometime after 1963, the remaining portion of the structure was also burned, leaving nothing but a well pipe protruding from the ground, and a charred mattress spring. Bessay neither rebuilt the structure, nor had the land surveyed.

At the Commission hearing, the United States presented two expert witnesses, Richard Lay, a registered land surveyor, and Paul O'Leary, a licensed real estate appraiser. The professional qualifications of both experts were conceded by Bessay. Lay's testimony on the location of Bessay's land was based upon the superimposition of the boundary lines of the 1899 subdivision plan on to a 1972 quadrangle United States coast and geodetic survey map. By this survey technique, and upon an on-site inspection, Lay testified that there was no evidence of a dwelling on the property, and concluded that the land was physically unbuildable.

O'Leary's testimony dealt with the appraisal of the land. Upon viewing the land, and considering the applicable zoning ordinances, O'Leary testified that, since the land is mainly a series of sand dunes sloping toward the ocean, it cannot be used to

build any type of structure. Therefore, O'Leary testified that the land was worth two thousand dollars. In its report, the Commission accepted the testimony of both Mr. Lay and Mr. O'Leary, and, on July 2, 1984, the district court adopted the Commission's report.

Bessay contends that, since there is evidence that a "dwelling" existed on her land prior to 1959, she has "rebuilding rights," and, therefore, is entitled to an exemption from condemnation under section 459b-3 of the Act. In the alternative, Bessay contends that, even if she is denied an exemption from condemnation, the amount of compensation paid for her land, two thousand dollars, was insufficient and unjust. Specifically, Bessay argues that, since the value established by the Commission was based upon an imprecise land survey, the Commission's finding of fair market value was erroneous, and should not have been adopted by the district court.

The United States, on the other hand, contends that, notwithstanding the scant and insufficient evidence which indicates that some sort of structure may have existed in the past, at the present time there is no dwelling on the land. Furthermore, the land has never been served by utilities, and does not fall within the statutory definition of "improved property" under the Act. The United States also contends that, since Bessay's land was surveyed according to proper and accepted methods, and was determined to be situated on a coastal bank, the Commission was correct in finding that one could not build upon it. The United States, therefore, maintains that the district court committed no error in adopting the Commission's finding that the fair market value was two thousand dollars.

### Improved Property Exemption

■ The power of eminent domain is an unquestioned attribute of sovereignty. It is subject only to the constitutional limitation that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Hence, anyone who purchases or leases property does so "at the risk of being evicted by the government or its delegate to acquire his interest upon payment of just compensation." *United States v. 16.92 Acres of Land*, 670 F.2d 1369, 1371 (7th Cir.), *cert. denied sub nom.*, 459 U.S. 824, 103 S.Ct. 54, 74 L.Ed.2d 60 (1982) (*citing Green Street Ass'n v. Daley*, 373 F.2d 1, 6 (7th Cir.), *cert. denied*, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967)).

In 1961, the "Cape Cod National Seashore" was established to limit the development which was threatening to "destroy much of the cape's natural appeal." S.Rep. No. 428, 87th Cong., 1st Sess., *reprinted in* 1961 U.S.Code Cong. & Ad.News 2212, 2218. The increasing popularity of the cape seemed to jeopardize the historic integrity of the area, as well as its scenic and scientific values. Hence, Congress enacted the Cape Cod National Seashore Act to ensure the preservation of the region, by the exercise of the power of eminent domain. In a novel approach, however, Congress decided that, rather than exclude all persons from owning or living on the land within the seashore, those persons who had owned homes in the area for a certain period of time would be permitted to remain upon those lands.

The Cape Cod National Seashore Act expressly provides that the authority of the Secretary of the Interior to acquire land within the Cape Cod seashore shall:

(1) ... *be suspended with respect to all improved property located within such area* in all of the towns referred to in section 459b of this title for one year following August 7, 1961.

(2) Thereafter *such authority shall be suspended with respect to all improved property located within such area* in any one of such towns during all times when such town shall have in force and applicable to such property a duly adopted, valid zoning bylaw approved by the Secretary in accordance with the provisions of section 459b-4 of this title.

16 U.S.C. § 459b-3(b) (emphasis added).

Under the Act, "improved property" is defined as:

*a detached, one family dwelling the construction of which was begun before September 1, 1959* ... together with so much of the land on which the dwelling is situated, the said land being in the same ownership as the dwelling, as the Secretary shall designate to be reasonably necessary for the enjoyment of the dwelling for the sole purpose of non-commercial residential use, together with any structures accessory to the dwelling which are situated on the land so designated. The amount of the land so designated shall in every case be at least three acres in area, or all of such lesser amount as may be held in the same ownership as the dwelling....

16 U.S.C. § 459b–3(d) (emphasis added).

■ By adding the "improved property" exemption, Congress clearly intended to prevent the condemnation of existing homes on Cape Cod. *See* S.Rep. No. 428, 87 Cong., 1st Sess., *reprinted in* 1961 U.S. Code & Ad.News 2212, 2232–2235. Since Congress could not enact local zoning ordinances to avoid condemnation, approval by the Secretary and minimum standards for local zoning bylaws were also established under the Act. For example, under the Act, regulation 27.3(b) of Title 36 of the Code of Federal Regulations was promulgated which states that "[z]oning bylaws for the Seashore District shall be consistent with the objectives and purposes of the Act of August 7, 1961, so that ... the distinctive Cape Cod character of existing residential structures will be maintained." 36 C.F.R. § 27.3(b). Hence, even improved property can be condemned, if it is used inconsistently with town zoning laws. *United States v. Certain Lands in Truro,* 476 F.Supp. 1031, 1032–33 (D.Mass.1979).

■ By enacting the Cape Cod National Seashore Act, Congress sought to strike "a balance between the natural beauty and human element of Cape Cod while coping with its inability to enact zoning laws." *United States v. Certain Lands in Truro,* 476 F.Supp. 1031, 1032 (D.Mass.1979). The legislative history clearly indicates that by the "improved property" exemption Con-gress specifically intended to protect *homeowners.* In explaining the legislation, it is expressly stated in the Senate Report that "all homeowners ... whose property is on the seashore are assured the right to continue to own and occupy their homes without interruption or interference so long as the zoning is kept in force." S.Rep.No. 428, 87th Cong. 1st Sess., *reprinted in* 1961 U.S.Code & Ad.News 2212, 2231. In reviewing the legislative history, the Court of Appeals for the Seventh Circuit, noted that the improved property exemption "attempts to lessen the burden of condemnation for private landowners *who have developed their property,* while at the same time attempting to guarantee maximum access of undeveloped lands to the public." *United States v. 16.92 Acres of Land,* 670 F.2d 1369, 1374 (7th Cir.1982) (emphasis added), *cert. denied,* 459 U.S. 824 (1982). *See also United States v. 733 Acres of Land,* 552 F.Supp. 1, 3 (D.Mass.1982).

Consequently, we have no doubt that the "improved property" exemption of the Act has been designed and interpreted to prevent the eviction of bona fide or actual *homeowners* from established residences, thereby accommodating "the legitimate interests of existing residents." S.Rep. No. 428, 87th Cong. 1st Sess., *reprinted in* 1961 U.S.Code & Ad.News 2212, 2220.

■ Since the town of Provincetown has enacted zoning ordinances approved by the Secretary, the court must determine whether the land in issue is "improved property" within the meaning of the Act. The record indicates clearly that the structure, which allegedly existed on Bessay's land prior to 1959, was never served by utilities, had no waste disposal facilities, and permits for such services or facilities were never obtained or issued. Clearly, the legislative history and the case law interpreting the Act reveal that Congress did not intend to include within the definition of "improved property" the kind of structure which may have existed on Bessay's land.

■ Bessay nevertheless contends that since her "dwelling" was burned she has

"rebuilding rights," and, therefore, is entitled to an exemption from condemnation. In its opinion of July 2, 1984, the district court overruled Bessay's objections to the Commission's report, and held that there was sufficient evidence in the record to support the Commission's conclusion that Bessay could not build on her land. Since there was no dwelling on Bessay's land at the time of the taking, and the land is unbuildable, we hold that she has no rebuilding rights, and affirm the district court. To hold otherwise would frustrate the legislative purpose and intent in enacting the Cape Cod National Seashore Act.

### Just Compensation

The question pertaining to the "just compensation" paid for Bessay's land, is twofold. First, we must decide whether the land Commission was the proper body to determine the location and value of Bessay's land, and, second, if it was, whether the district court committed error in adopting the Commission's determination.

Generally, the Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real property under the power of eminent domain. As to the trial of a condemnation action, Rule 71A(h) provides that:

If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation ... *unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it.* ... [The Commission's] action and report shall be determined by a majority and its findings and

report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court. *Id.* (Emphasis added). In actions tried without a jury, Rule 53(e)(2) of the Federal Rules of Civil Procedure provides that the court shall: "accept the master's finding of fact unless clearly erroneous.... The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The district court in this case ordered that, pursuant to these rules, the issue of just compensation be referred to a fact-finding land commission. It is clear that the location of the land relates directly to the question of just compensation. The Supreme Court has held that, in making a determination of the fair market value of land in an eminent domain proceeding, the fact-finder should consider "*all facts* affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof." *Olson v. United States*, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934) (emphasis added).

In *Olson*, landowners appealed condemnation awards for flowage easements, contending that the properties' special adaptability for flowage and storage of water should have been computed into the valuation of the property. The Court held that, since only the appropriating authority would have such a use for the property, the adaptability for flowage could not be included in the valuation. It is important to note that the Court stated that the amount of compensation "is to be arrived at upon just consideration of all the uses for which [the property] is suitable." *Id.* at 255, 54 S.Ct. at 708.

More than fifty years prior to *Olson*, the Supreme Court had declared that the adaptability of lands for certain purposes was a proper element in the determination of the value of condemned land. *Boom Co. v. Patterson*, 8 Otto 403, 409, 98 U.S. 403,

409, 25 L.Ed. 206 (1878). In *Boom Co.*, the location of the defendant's property on three islands in the upper Mississippi River made them a natural "log boom." The Court found that *"[t]he position* of the three islands ... added largely to the value of the lands.... Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands." *Id.* 8 Otto at 408 (emphasis added). Thus, in view of the location and use of the property, the Court upheld the valuation established by the appointed commission. *Id.* 8 Otto at 410.

In the prior proceedings, Bessay attempted to show that her land is suitable for the construction or reconstruction of a dwelling. Hence, since "[j]ust compensation includes all elements of value that inhere in the property," *Olson, supra,* 292 U.S. at 255, 54 S.Ct. at 708, the location of the Bessay property and its possible uses, are clearly factors which affect its market value.

The Court of Appeals for the Fifth Circuit has held that "the prerequisite to having land valued on the basis of a particular potential use, was proof that the use was practicable and that there was a reasonable likelihood that the land would be so used in the reasonably near future." *United States v. Cooper,* 277 F.2d 857, 859 (5th Cir.1960). The same court, in a later case, stated that "once the landowner has produced credible evidence that a potential use is reasonably practicable and reasonably probable within the near future, it is for the jury (or commission) to decide whether the property's suitability for this use enhances its market value...." *United States v. 320.0 Acres of Land,* 605 F.2d 762, 817 (5th Cir.1979).

In the *320.0 Acres* case, the Fifth Circuit reviewed a condemnation award for property taken in establishing the Everglades National Park in Florida. One of the questions presented was whether the district court, in evaluating the "highest and best use" of the property, had properly excluded

from the jury the suitability of the property for certain uses. The court stated that:

> if suitability for a particular use *might* reasonably affect fair market value—in the sense that a just compensation award based in part upon the potential for that use would not be invalid as a matter of law—then evidence pertaining to that use must be admitted for consideration by the trier of fact.

*Id.* at 817 (emphasis in original).

The court reasoned "that adaptability or suitability for nonexisting uses is an inextricable factual element of market value." *Id.* Thus, the court concluded that, if suitability for a particular use might affect market value, evidence regarding that use must be presented to the trier of fact. *See* P. Rohan and M. Reskin, *Condemnation Procedures & Techniques* § 8.06[2] (1984). The court noted that there were differences in the properties under consideration, "among them ... *the location of the properties* relative to easily traversed waterways ... may mean that some of the properties are suitable ... for permanent structures, whereas others must be valued as undeveloped and unimprovable." *Id.* at 827 (emphasis added). In remanding the case to the district court, the Fifth Circuit recommended that the fact-finding function be performed by a commission.

In this case, since there was a discrepancy of one hundred and fifty feet, the parties could not agree as to the exact location of the two tracts of land owned by Bessay. This distance, however short, meant the difference between the property being situated on top of a cliff, or falling on the side of a coastal bank. It cannot be questioned that this discrepancy is a factor which vitally affects the market value of Bessay's land. Nor can it be questioned that the location of the land was specifically considered by the Commission, and that the district court approved the Commission's report.

Nevertheless, Bessay urges that, since the original complaint of the United States did not locate the property with certainty, and did not apprise her of the United

States' contention that the land was located on a coastal bank, it was deficient. Bessay also alleges that the complaint referred solely to exhibits which lacked precision as to the location of her land, to wit, the original 1899 subdivision plan.

Rule 71A(c)(2) of the Federal Rules of Civil Procedure states:

> The complaint shall contain a short and plain statement of the authority for the taking, the use for which the property is to be taken, a description of the property sufficient for its identification, the interests to be acquired, and as to each separate piece of property a designation of the defendants who have been joined as owners thereof or of some interest therein.

*Id.*

Rule 71A(c)(2) is consistent with the notice theory of pleading embodied in the Federal Rules that: "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2).

Indeed, the Supreme Court has found that:

> the Federal Rules of Civil procedure do not require a claimant to set out in detail the facts upon which he bases his claim.... Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

*Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

■ The United States complied with the requirements of Rule 71A(c)(1). The complaint included descriptions of the property by lot number, according to the original tract plan, as well as by maps which revealed the tracts of Bessay's land with particularity. This was certainly "sufficient for its identification." Fed.R.Civ.P. 71A(c)(2): *see Atlantic Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455, 458 (4th Cir.1963). Further information was available, as in any civil case, through ordinary discovery proceedings. *See Van Sterkenburg, supra,* 318 F.2d at 459; *see also Conley v. Gibson, supra,* 355 U.S. at 47–48, 78 S.Ct. at 102–03. Thus, we find no merit to Bessay's contention that the complaint is deficient, and hold that the appointment of the Commission by the district court was proper.

■ Having determined that the location of Bessay's land is intertwined with its value, we must now decide whether the district court was correct in adopting the Commission's finding of fair market value. Specifically, the question presented is whether the sum of money awarded to Bessay was "just compensation" under the Fifth Amendment.

In an eminent domain proceeding, "the factfinder is presented with multiple sets of conflicting value estimates...." *United States v. 125.07 Acres of Land,* 667 F.2d 243, 249 (1st Cir.1981). When the fact-finder makes a finding based on the evidence, and the finding is adopted by the district court, this Court's standard of review is limited. *Id.* "If the condemnation commission distinctly marks the path it follows in making a specific compensation award, and if the district court adopts the commission's report, the court of appeals must determine whether the report, as adopted by the district court, is 'clearly erroneous.'" *Id.* (quoting *United States v. 9.20 Acres of Land,* 638 F.2d 1123, 1126 (8th Cir.1981)); *accord United States v. 177.51 Acres of Land,* 716 F.2d 78, 82 (1st Cir.1983). *See also United States v. Merz,* 376 U.S. 192, 198–99, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964) (a commission must make clear its reasoning). "[A] finding of fact is only deemed clearly erroneous if it is not supported by substantial evidence, if it proceeds from an erroneous conception of the applicable law, or if on a consideration of the entire record the appellate court is left with the definite and firm conviction that a mistake has been made." *Southern Illinois Stone Co. v. Universal Engineering*

*Corp.*, 592 F.2d 446, 451 (8th Cir.1979). *See also* 7A Nichols, *The Law of Eminent Domain* § 9.06 (P. Rohan & M. Reskin 3d ed. 1983).

In this case, the Commission based its finding of value on the evidence which included the testimony of the two experts. One of the experts, Richard Lay, testified that Bessay's land now lies predominantly on the face of the coastal bank with only a small portion situated on the top of the bank. It is clear that, since the original platting of the area in 1899, Bessay's land has suffered significant erosion. An on-site inspection by Lay of Bessay's land revealed that a water pipe, apparently the pipe which Bessay claimed had protruded vertically from the ground, now protrudes horizontally from the face of the bank. In addition, Lay testified that approximately half of Bessay's land would be inundated by the sea during a severe storm.

Appraiser Paul O'Leary testified that he established the value of Bessay's land based upon the "highest and best use" of the property, and a comparison with the sale prices of similar parcels in the seashore area. This is an appropriate and accepted method for determining the fair market value of property in a condemnation proceeding. *E.g., United States v. 47.14 Acres of Land*, 674 F.2d 722, 725 (8th Cir.1982); *United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir.1980).

O'Leary agreed with Lay that the property was situated on the face of the coastal bank. O'Leary also testified that the Wetlands Protection Act, Mass.Gen.Laws.Ann. ch. 131, § 40 (West 1974 & Supp.1985), would prevent the construction of a new structure even if the property was on the edge of a dune, rather than on its face. O'Leary thus found the highest and best use of Bessay's land to be as conservation land. Having found the price of similar properties in the neighboring town of Wellfleet to be one thousand dollars per lot, for lots nearly twice as large as those of Bessay, O'Leary concluded that Bessay's four lots had a value of five hundred dollars each, for a total of two thousand dollars.

Bessay claimed that when she viewed the property for the first time, she saw a portion of a structure, a room approximately twelve feet by twelve feet. She offered maps and testimony indicating that her lots sat above the coastal bank. Bessay also testified that the value of the property, as situated where she claims, was $30,000. In essence, Bessay contended that her land had a higher value because the property was buildable.

After considering all the evidence, the Commission concluded that the subject property is located on the coastal bank, and, as a practical matter, is unbuildable. In addition, the Commission found that zoning and conservation laws would prevent construction on this land. Stating that the properties she offered as comparable were not comparable, since they were situated in established residential areas on solid ground, the Commission rejected Bessay's valuation. Thus, on all of the evidence, including the expert testimony, the Commission accepted the United States' valuation of two thousand dollars as the fair market value for Bessay's land. This sum was awarded, even though the Commission stated in its report that it was doubtful that any market existed for the sale of this land. *See generally United States v. Meadow Brook Club*, 259 F.2d 41, 45 (2d Cir.), *cert. denied*, 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239 (1958).

Although the opinion of a property owner may be sufficient proof, based upon the supposition that the property owner has intimate knowledge of the property, *United States v. 329.73 Acres of Land*, 666 F.2d 281, 284 (1982), *modified on reh'g*, 704 F.2d 800 (5th Cir.1983); *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir.1966), the Commission was justified in rejecting Bessay's opinion in light of the detailed and convincing expert testimony submitted by the United States. *See United States v. 177.51 Acres of Land*, 716 F.2d 78, 83–84 (1st Cir.1983); *United States v. 9.20 Acres of Land*, 638 F.2d 1123, 1127 (8th Cir.1981). Here, it is particularly significant that the property owner failed "to show the reason-

able probability that the property, *at the time of the taking*, was adaptable" for the use she proposed. *United States v. 158.24 Acres of Land*, 515 F.2d 230, 233 (5th Cir. 1975) (emphasis in original).

The Commission considered the positions of both parties, and explained its reasons for accepting the valuation of the United States' experts. Since we find that the report of the Commission was based upon the clear and convincing testimony of the government's expert witnesses, we hold that its acceptance by the district court was correct and not clearly erroneous.

### Conclusion

In view of the foregoing, we hold that Bessay's land does not qualify for the "improved property" exemption under section 459b–3 of the Cape Cod National Seashore Act. We also hold that the Commission properly determined the fair market value for Bessay's land, and that the district court committed no error in adopting the Commission's report. Since the sum of two thousand dollars for the condemned land was "just compensation" under the Fifth Amendment, the judgments of the district court are affirmed.